LIZZIE RUMBOLD

*v.*

THE SUPREME COUNCIL ROYAL LEAGUE.

*Opinion filed December 16, 1903—Rehearing denied February 4, 1904.*

1. INSTRUCTIONS—*when evidence is close the jury must be accurately instructed.* The jury should be accurately instructed where the evidence is conflicting and the case is close or doubtful.

2. SAME—*when instruction as to force of coroner's verdict as evidence is misleading.* An instruction is misleading which, in effect, informs the jury that while the verdict of a coroner's jury is not conclusive of the cause of death, yet, being under the sanction of the official oath of the officer, it is a high class of evidence.

3. SAME—*instruction is bad which, in effect, authorizes a presumption of suicide.* In an action on a benefit certificate, where the defense is suicide, an instruction is erroneous which, in effect, authorizes the jury to presume suicide from the circumstances proven, in the absence of proof showing death from other causes.

4. EVIDENCE—*when the law does not presume existence of fact.* The existence of a fact which must be affirmatively shown is never presumed from the mere absence of facts showing the negative.

5. SAME—*defense of suicide must be affirmatively established.* Defendant in an action on a benefit certificate has the burden of establishing, by a preponderance of the evidence, the defense that the insured committed suicide.

6. BENEFIT SOCIETIES—*society must plead defense of exemption when sued as garnishee.* It is the duty of a benefit society, when funds in its hands belonging to a beneficiary are garnisheed, to interpose by plea the exemption created by section 9 of the act of 1893, (Laws of 1893, p. 134,) and it is not optional with the society whether it will interpose the defense or suffer judgment.

*Rumbold* v. *Sup. Council Royal League,* 103 Ill. App. 596, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

UTT BROS., for plaintiff in error.

MILLARD R. POWERS, for defendant in error.

206—33

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an action of assumpsit, brought by plaintiff in error on a benefit certificate, naming her as beneficiary, insuring the life of her husband, Harry Rumbold, in the sum of $4000, issued by defendant in error, a fraternal beneficiary society organized under the laws of Illinois.

Harry Rumbold, on the 28th day of November, 1893, obtained a certificate for $2000 from the defendant society, which was changed to $4000 on the 15th of September, 1894, and upon which this suit was brought. The insured died on the 7th day of July, 1897. The defendant by special plea set up the defense of suicide, and plaintiff replied traversing the plea. This was the only issue in the case, it being admitted that the plaintiff was entitled to recover $4000 and interest if this defense failed, and but $2000 if it was established. Defendant tendered to plaintiff $2000 and admitted its liability to that extent.

To sustain the defense of suicide evidence was offered by the defendant in error showing that about half-past twelve o'clock on the morning of July 7, 1897, Harry Rumbold, the insured, was found lying under a tree in a small park fronting the lake, at the corner of Fifty-third street and East End avenue, in the city of Chicago. Four policemen found Rumbold lying there, unconscious and breathing heavily, and took him to the Hyde Park police station, where he died soon afterwards. He was taken thence to the morgue and a *post mortem* examination and coroner's inquest held.

The insured was thirty-nine years of age at the time of his death. He was married, his family consisting of himself, his wife, and boy about ten or twelve years of age. He was of sober habits and his family relation was pleasant. He had been for a number of years connected with the garbage department of the city of Chicago, but at the time of his death was out of employment and had recently taken the civil service examination with a view of again entering into the service of the city. He was

subject to attacks of stomach trouble, which sometimes were quite severe and unfitted him for work or business for a day or two at a time. He left his home on the second day of July and went down to the city hall, ostensibly to see about the letting of certain garbage contracts, and the next that his family knew of him was the information that he was at the police station, dead.

The cause has been tried three times. Two verdicts were for the plaintiff in error for the full amount of the policy, and interest. New trials were had, and the verdict in the case from which this writ of error is prosecuted was for $2000. The Appellate Court for the First District affirmed the judgment of the trial court, and by writ of error the case is brought to this court.

The errors assigned relate to the rejection of evidence offered by plaintiff in error and the giving and refusal of instructions.

The coroner's jury found that the insured came to his death by taking carbolic acid with suicidal intent. A *post mortem* examination was made by Dr. Elijah Noel, coroner's physician. He made an autopsy, but did not make a chemical analysis of the contents of the stomach or of any of the organs. He testified that the insured died from carbolic acid, and that it was his judgment that about two ounces had been taken. He described the symptoms and the evidence that led him to the conclusion that such poison was the cause of death. He relied mainly upon the physical effects shown by the throat, stomach, heart and alimentary canal, and the odor, for the presence of carbolic acid. Two of the policemen who found the insured lying in the park testified for defendant in error, but neither of them was inquired of concerning the odor or presence of carbolic acid, while the other two policemen testified, on behalf of plaintiff in error, that they did not notice any smell of carbolic acid or any indications that such drug had been taken. No bottle was found and no message or other writing or state-

ment was left by the insured indicating suicide. Two physicians testified, on behalf of plaintiff in error, that creosol, guiacol, trisol, lysol and salol were all substantially of the same odor as carbolic acid, and that they produced the same effect upon the stomach and gullet, and that they are remedies frequently administered to persons suffering with stomach derangements. Both of them expressed the opinion that without a chemical analysis it could not be told whether a death was due to the use of carbolic acid or not.

The only motive attempted to be shown in support of the theory of suicide was that the insured was in debt in small sums, not to exceed $100, and that in June before his death he had obtained from a Mrs. Shannon $500, which he represented to her he would use as a deposit in a proposed bid with the city for certain garbage contracts, which, if obtained, would enable him to give employment to the teams of Mrs. Shannon. The contracts were let about the second of July, but before that time Mrs. Shannon appears to have become uneasy about her money, as it was understood that the money should be returned to her, the insured having it only for the purpose of making the preliminary deposit; if he obtained a contract he would enter into bond and the money would be refunded; if he did not obtain the contract the money would be refunded, and in either event would be returned to Mrs. Shannon. Mrs. Shannon sent her brother-in-law, McAuliffe, on two occasions prior to July 2, to see the insured and demand of him the return of the money, but in each instance he put her off with the statement that the contracts were not yet let but would be within a few days. Defendant in error also proved by a witness connected with the garbage department that the insured did not, in fact, make an application for a contract. The plaintiff in error then offered to show that a contract for the particular ward that the insured was to obtain for Mrs. Shannon was obtained in the name of McAuliffe,

and that $500 was deposited to obtain that contract, and
when the bond was given the $500 was returned to Mc-
Auliffe. The court refused to permit this testimony un-
less counsel for plaintiff in error would also undertake
to show that the $500 deposited on the McAuliffe bid was
the money obtained by the insured from Mrs. Shannon.
Plaintiff in error could not do this, and the evidence was
excluded and exception taken, and this ruling is now
urged as error. We think it was not error to exclude this
evidence. The insured was not to have the $500 in the
event that the contract was obtained, but whether ob-
tained or not the $500 was to be returned to Mrs. Shannon,
and the mere fact that McAuliffe applied for a contract
and put up the deposit of $500 and obtained the contract,
and withdrew the deposit so made by him upon entering
into the necessary bond, did not tend to show that the
$500 used by McAuliffe was the money received by the
insured from Mrs. Shannon,—and that was the whole
point to the evidence, so far as it was offered by plain-
tiff in error. McAuliffe was a witness, and if plaintiff in
error believed he had the $500 Rumbold received from
Mrs. Shannon, he should have been asked about it on
cross-examination, but was not.

Sufficient has been stated to show that upon the facts
of the case it was a very close one, and it is the uniform
rule that where the evidence is conflicting and the case
close or doubtful, it is highly essential that the jury shall
be accurately instructed. As we have said, the verdict
of the coroner's jury was admitted in evidence, and the
following instruction relating to it was given at the re-
quest of defendant in error:

"The jury are instructed that the coroner is a public
officer acting under the sanction of an official oath in the
discharge of a public duty enjoined by law, and that the
inquisition of a coroner and jury is competent evidence
tending to prove the cause of death, which appears upon
the face of the inquisition. If the jury believe, from the

evidence, that the coroner of Cook county held an inquest over the remains of Harry Rumbold for the purpose of ascertaining the cause of his death and rendered a finding and verdict as to the cause of such death, the jury are instructed that they should consider such finding and verdict of the coroner and jury, together with all the other evidence, facts and circumstances in the case, when you are determining the question whether or not Harry Rumbold committed suicide. The finding of the coroner's jury or inquest is, however, not conclusive upon you in determining the cause of death.".

We regard this instruction as misleading, argumentative and unfair to plaintiff in error. While it is true that the coroner is a public officer and acts under the sanction of an official oath in discharging duties enjoined upon him by law, there is nothing that the coroner did that was before the jury. All that was admitted in evidence was the verdict of the coroner's jury, and while it would have been proper to have told the jury, by an instruction, that the verdict of the coroner's jury could be considered by them in determining the nature and cause of death, it should have stated that in very simple language, and have coupled with it the statement, not that it was not conclusive, as is the conclusion of the instruction here, but that it was simply evidence that might be considered with other evidence. As we interpret the instruction, it in effect tells the jury that while the verdict is not conclusive, it comes under the sanction of the official oath of an officer in the discharge of his duty, and is of a very high class of evidence. We think the court had as well said to the jury, that while the law does not make the verdict of the coroner's jury conclusive upon the question before them, the court regards it as very strong evidence of the matters contained in it. The vice of the instruction is not relieved by telling the jury that they should consider it in connection with the other evidence, facts and circumstances in the case.

In another instruction given for defendant in error the jury were told:

"When, in a case such as this, the cause of a person's death is the subject of inquiry, then whether or not death was occasioned by suicide or some other cause need not necessarily be proven by the testimony of an eye-witness, but may be established by circumstantial evidence, such as the location and circumstances surrounding the finding of the person at or immediately before the time of death; the condition of the body and organs thereof after death; the absence or presence in any of the organs of any death-producing substance, as to whether or not sufficient to produce death, *and the absence or presence of any other cause of death than suicide;* and in this case it is the duty of the jury to determine whether or not the decedent, Harry H. Rumbold, died by suicide, and to consider all the testimony, facts and circumstances in evidence, and from all such testimony, facts and circumstances, *including the absence or presence of any evidence, facts or circumstances tending to show death from any other cause,* determine whether or not the decedent came to his death by suicide, and if they believe, from the preponderance of the evidence, that he came to his death by suicide, then to render a verdict in favor of the plaintiff for $2000, and no more."

This instruction would convey to the jury the idea, as we think, that from the finding of the insured in the condition shown by the evidence, and the circumstances surrounding it, the presumption of suicide followed, and that in considering the evidence the jury must take into consideration the absence or presence of any other cause of death than suicide. This last idea is twice expressed in the instruction. The law is, of course, well settled that suicide is not presumed, but that the presumption is death from natural or accidental causes rather than suicide, and an instruction that makes the test the presence or absence of some other cause than suicide would seem to

be a reversal of the test. Defendant in error had the affirmative of the issue that the insured came to his death by suicide, and yet, by the instruction as given, the jury were practically told that the absence of evidence showing death from a cause other than suicide would raise a presumption in favor of suicide. The law never presumes the existence of a fact which must be affirmatively shown from the mere absence of facts showing the negative. Coupling this instruction with the instruction and comment of the court as touching the character of the coroner's verdict, it would seem that the natural effect upon the mind of the jury would be that, the verdict of the coroner's jury being of such high character although not conclusive, in the absence of a preponderance of the evidence showing some other cause of death than suicide, they would be warranted in concluding that the insured came to his death from suicide. These instructions we regard as wholly prejudicial to the rights of plaintiff in error under the circumstances surrounding this case, and the giving of them as such error as must work a reversal of the case.

After proof of death had been filed with defendant in error and it had made a tender to plaintiff in error of $2000, which it claimed to be the limit of its liability, defendant in error was garnisheed by one Landon, the former attorney of plaintiff in error, and suffered judgment of garnishment to go against it to the extent of $130, and it offered said judgment as a set-off or credit in the case at bar. This was objected to, and the hearing reserved by the court until the entering of the judgment. Upon the final hearing the trial court refused to allow defendant in error credit for the amount of this garnishment judgment, and defendant in error assigns cross-error upon such refusal. By section 9 of the act of June 22, 1893, relating to the organization and management of fraternal beneficiary societies, it is provided: "The money or other benefit, charity, relief or aid to be

paid, provided or rendered by any society authorized to do business under this act, shall not be liable to attachment by trustee, garnishee, or other process, and shall not be seized, taken, appropriated or applied by any legal or equitable process, or by operation of law, to pay any debt or liability of a certificate holder, or of any beneficiary named in a certificate, or of any person who may have any right thereunder." (Hurd's Stat. 1899, p. 1033.) The defendant in error is a fraternal insurance organization, organized under the act of which the above section is a part. The law is settled that it is the duty of a garnishee to interpose, for the benefit of the judgment debtor, any exemption of the fund that may exist in favor of the judgment debtor. (*Chicago and Alton Railroad Co.* v. *Ragland,* 84 Ill. 375; *Chicago, Rock Island and Pacific Railway Co.* v. *Mason,* 11 Ill. App. 525; *Welker* v. *Hinze,* 16 id. 326.) It was clearly the duty of defendant in error to have interposed the plea of the above statute when the fund in its hands belonging to plaintiff in error was sought to be reached by garnishment.

Defendant in error urges that the statute is only designed to protect the society against harassing suits, and that it was at the option of the society to interpose the defense or suffer judgment; that the statute is not one of general exemption for the benefit of the policyholder or a beneficiary named in the policy, and cites in support of this contention *Martin* v. *Martin,* 187 Ill. 200. We think this view of the statute entirely too narrow, and that the case cited does not support it. In *Martin* v. *Martin* the benefit fund had been paid by the society to the agent of the beneficiary, and while in his hands it was garnisheed. In the latter case we said (p. 201): "It is clear that such money is exempt before it is paid by the society, and that the society itself cannot be garnisheed for such demands. The language of the statute seems to confine the exemption, so far as applicable to a case of this character, to money *to be paid,* and not to extend

it to money after it has been paid.'" The court did not err in refusing to allow credit for this amount.

For the reasons stated the judgments of the Appellate Court and the superior court of Cook county are reversed, and the cause is remanded to the superior court of Cook county for such further proceedings as to law and justice may appertain.      *Reversed and remanded.*