## Mary J. Barbour, Appellee, v. Aetna Life Insurance Company, Appellant.

### Gen. No. 26,598.

1. INSURANCE—*sufficiency of evidence in action on accident policy.* In an action upon an accident insurance policy, evidence examined and *held* sufficient to sustain the finding of the jury that the death of insured was due to accidental injury·to the brain by a fall and not to ulceration of the stomach and other diseases.

2. INSURANCE—*when formal proofs of accident waived.* Where plaintiff, in an action on an accident insurance policy, wrote a letter to the insurer within the prescribed time informing it of the death of her husband as the result of an accident, as to the date of which it already had been notified, and it appeared that the insurer received such letter and took affirmative action under it without questioning its sufficiency in any way and its physician was in frequent attendance upon insured and, after his death, defendant demanded an autopsy, the filing of formal proofs of loss was waived.

3. INSURANCE—*when refusal to allow autopsy question for jury.* Under an accident insurance policy which gave the insurer the right to hold an autopsy in case of the death of insured and provided that in case of an autopsy being held otherwise than by a public officer in discharge of his duties, the insurer should be given due notice and an opportunity to participate therein, where insurer was notified of the holding of an autopsy by the coroner and was represented thereat and had full benefit of all the information obtained there and by microscopic and chemical examinations which followed, the question whether plaintiff refused to allow an autopsy was an issue of fact and was properly submitted to the jury.

4. INSURANCE—*when demand by insurer for autopsy unreasonable.* A demand for an autopsy made by insurer under an accident policy after an autopsy by the coroner and after the body had been prepared for burial, where there was ample opportunity to make such demand at an earlier date, was unreasonable where there was uncertainty as to the time it was proposed to hold such autopsy, and it would have required holding the remains for several days to suit the convenience of the insurer.

5. INSTRUCTIONS—*when instruction purely cautionary and unobjectionable.* An instruction, in an action on an accident insurance policy, by which the jury were informed that they were the sole judges of the facts and that the court did not mean by any of its instructions to pass judgment upon any of the facts in the case or to intimate in any way what the verdict should be, was purely cautionary and unobjectionable.

6. APPEAL AND ERROR—*what instruction not reversible error.* An instruction advising the jury that they are the sole judges of the facts, while objectionable, *held* not, alone, reversible error.

7. APPEAL AND ERROR—*cure of error in instruction by other instructions.* Appellant cannot be allowed to avail itself of any defect in the phraseology of an instruction where the jury were fully instructed as to that feature of the case by other instructions.

8. INSURANCE—*when instruction in action on accident policy not objectionable.* In an action on an accident insurance policy, an instruction relating to the burden of proof and advising the jury that if they found the evidence to have preponderated slightly in favor of plaintiff it would be sufficient for them to find the issues in her favor, was not objectionable as being peremptory in character and as ignoring affirmative defenses of failure to file formal proof of death and to permit an autopsy.

9. APPEAL AND ERROR—*error in instruction favorable to appellant as not ground for reversal.* An instruction that the jury were the judges of the credibility of expert testimony the same as of other witnesses was, where the only expert witnesses were those of appel-

lant, more favorable to appellant than an instruction in strict accordance with law and therefore is not ground for reversal.

Appeal from the Circuit Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed February 14, 1922. Rehearing denied February 25, 1922. *Certiorari* denied by Supreme Court (making opinion final).

DANIEL F. FLANNERY and ROBERT J. FOLONIE, for appellant.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, for appellee; CHARLES F. RATHBUN, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is an action of assumpsit based upon an accident insurance policy whereby William H. Barbour was insured against loss resulting from bodily injuries effected solely through external, violent and accidental means. Plaintiff, who is appellee here, was the wife of the insured and the beneficiary under the policy. There was a verdict and judgment in favor of plaintiff for $5,750 and costs, from which this appeal was prayed and allowed.

The amended declaration alleged, in substance, that the insured, William H. Barbour, on January 11, 1917, accidentally slipped and fell on the ground, injuring his brain, skull and other parts of his body, and as a consequence of such injuries he died February 22, 1917, solely and independently of all other causes, and that his death was due solely to such bodily injuries and the proximate result thereof. The declaration further alleged that within 2 months after his death a written notice was given on behalf of plaintiff to defendant of the result of the accident and injury to the insured containing full details as to the name and address of the insured, the nature and date of the accident, with the full name and address of the plain-

tiff, and that thereafter the physician and surgeon of the defendant company repeatedly visited the insured at his residence and examined him thoroughly from time to time. The declaration avers that after the death of the insured on February 22, an autopsy and inquest were held upon his body by the coroner of Cook county and his physician; that defendant was notified of said autopsy and inquest and appeared at said inquest by its duly authorized agent and attorney; took part in the proceedings and examined, or had an opportunity to examine, the body of the insured; that afterwards a further hearing of said inquest was held March 31, 1917, and April 11, 1917, at which evidence was taken and transcribed and that within 2 months after insured's death a transcript of the proceedings was filed in the coroner's office; that at said hearings defendant appeared by its attorneys and examined and cross-examined the witnesses and heard the testimony of all the witnesses relative to the facts and circumstances surrounding the injuries, time, place and cause of the death of the insured; that upon two occasions the attorney for defendant requested, on behalf of defendant, that the coroner's hearing to determine the cause of the death of the insured be postponed until subsequent dates, and in conformity with said request said continuances were granted as aforesaid; that at each of these hearings the evidence produced showed that the insured came to his death as the result solely of bodily injuries, the proximate result of external, violent and accidental means and from no other cause. The declaration further averred that by means of these facts and circumstances defendant had due notice and knowledge of the accident, injury and death and of the causes thereof and the claim of plaintiff that insured came to his death on account of the bodily injuries mentioned and that by the communication sent to defendant March 1, 1917, the latter had notice and satisfac-

tory affirmative proof of the death of said insured was given to defendant.

A plea of the general issue was filed and also a special plea alleging that by the policy defendant was given the right to make an autopsy to determine the cause of death; that on February 22 and 23, 1917, a demand was made on the beneficiary for an opportunity to examine and make an autopsy of the body and that plaintiff refused. To this plea a replication was filed alleging that no demand was made on plaintiff as alleged; that defendant waived its right to make an autopsy and that defendant had the right and opportunity to make such autopsy. A third plea set forth the failure of plaintiff to furnish proofs of loss within 2 months from the date of death, as provided in the policy, and denied that defendant in any wise waived such proofs of loss. Plaintiff replied to this plea that satisfactory affirmative proof of the death of insured was furnished to defendant in writing within 2 months from the date of his death as required in the policy. The issues of fact which were raised by the pleadings and tried before the jury were: (1) Whether the death of the insured resulted directly, and independently of all other causes, from bodily injuries effected solely through external violent and accidental means; (2) whether plaintiff furnished proofs of loss as and when required by the policy; (3) whether defendant's demand for an autopsy was refused by plaintiff. A reversal of the judgment is sought upon the ground that the verdict and judgment were contrary to the manifest weight of the evidence upon these questions. In fact, appellant goes farther and insists that there was no evidence to sustain the verdict of the jury.

We have carefully examined the evidence in the case, which shows that the insured was a paving inspector in the employ of the City of Chicago; that for 10 years or more prior to the accident he had been constant in

attendance upon the duties of his position, which required active physical effort and that he be on his feet continually. His health during that period is shown conclusively to have been good. He complained of no illness or pains of any kind. It is undisputed that he met with the accident at the time and place above stated and that after said accident he never was able to perform any work, but was an invalid under constant daily treatment at his home or at the hospital, to which he had been conveyed for examination and treatment; that he was unconscious most of the time and was in a semicomatose condition practically all of the time. During this period he was attended by various physicians, one of whom, Dr. Curtis, had been his family physician for many years prior to the accident and was thoroughly familiar with the physical condition of the insured. These physicians testified that they treated him for an injury to the brain. Their testimony showed that the symptoms were such as ordinarily result from a brain injury. At least one of them testified that the death of insured was due solely to the injury which he suffered as a result of the accident. In view of the foregoing evidence, which is undisputed except as to the cause of death, it is obvious that there was ample evidence before the jury to justify them in reaching their verdict.

On behalf of defendant the coroner's physician testified that he performed the autopsy upon the insured and that on opening the skull he found that the brain was congested, although he found no evidence of a fractured skull. He found the lungs congested, the heart slightly enlarged and the liver and spleen enlarged. He also found an ulceration of the stomach with a foul odor. He removed the stomach and sent it to the coroner's chemist for analysis. He formed the opinion that the cause of death was general infection as the result of an ulcerated stomach. On cross-examination he testified that a person could not have

an ulcerated stomach and walk around in the pursuit of his ordinary affairs; that a person with a stomach in such a condition would be sick and would want to stay at home. He said that they might never die from it. He also testified that unconsciousness is not one of the symptoms following an ulcer of the stomach but that it frequently follows from an injury to a head through a fall, even in the absence of a fracture, and unconsciousness could also be caused by a fright or by a shock. The coroner's chemist testified as to the condition of decedent's stomach to the effect that there were ulcers and a necrosis of the tissue. Dr. Marble testified as to a statement which he had obtained from the insured while at the hospital regarding his injuries and an operation which he had sustained for gall stones some 10 years prior to the accident. From this statement it appeared that the insured was also afflicted with pyorrhea. Dr. Fischer testified as to a microscopic examination of the stomach of the insured, which tended to corroborate the testimony of Dr. Springer and Dr. McNally as to the ulcers and necrosis. He stated upon cross-examination that while these conditions would make the patient "more susceptible," they would not prevent him from walking along the street and suffering a brain injury resulting in death. Dr. O'Byrne testified as to the examination of a section of the stomach of insured, showing a condition substantially the same as indicated by the other medical witnesses. Dr. Hall and Dr. Hektoen were called as expert witnesses and in answer to a long hypothetical question based upon the stomach conditions of the insured as indicated by the testimony of the medical witnesses for defendant, stated respectively, in substance, that in their opinion death was caused from a general poisoning of the system due to ulcers and pyorrhea. Dr. Duncan, the medical examiner for defendant, testified that on February 22, 1917, after the death of insured, he was

notified by Dr. O'Malley, who was one of the insured's attending physicians, of the holding of the autopsy and that an inquest would be held at 2 o'clock on that day. He arrived at the residence of the plaintiff prior to the adjournment of the inquest and told her that the company desired an autopsy. He testified as to conversations with plaintiff February 23, 1917, wherein it is alleged that plaintiff refused to allow a further autopsy. This conversation does not indicate that plaintiff categorically refused to permit an autopsy, but that she sought the advice of her physicians and attorneys as to the necessity for any further autopsy. Dr. Duncan had known the insured for several years previous to his death and had visited and examined him repeatedly during his last illness. He was undoubtedly familiar with the injury suffered by insured and the medical treatment given him.

The foregoing is a brief summary covering all the testimony on behalf of defendant as to the physical condition of the insured at the time of his death. It is apparent that this evidence tends to corroborate the testimony given by the medical witnesses who testified on behalf of plaintiff. It does not in any way controvert the theory that the insured came to his death as a result of the accident. In fact, it tends to support that theory by showing that it would have been impossible for insured to have attended to his daily duties if he had been suffering from an ulcerated stomach of a sufficiently serious character to cause his death. We are of the opinion that the evidence was ample to sustain the verdict and cannot be regarded as contrary to the manifest weight thereof. There was no evidence, other than the opinions of expert witnesses, that any disease with which the insured was afflicted contributed with the accident to cause the death.

It is also urged by defendant that plaintiff should be precluded from a recovery because, as it is alleged,

no satisfactory proofs of the accident were furnished within the time limited by the policy. The provisions of the policy upon this subject are to the effect that notice in writing of any accident and injury, for which a claim shall be made, shall be given to the company at its home office in Hartford, Connecticut, with the full name and address of the insured, as early as may be reasonably possible and that satisfactory affirmative proof of death and that the same was due solely to bodily injury, the proximate result of external violent and accidental means within the conditions of this policy, must be furnished to the company at Hartford, Connecticut, in writing, within 2 months from the date of the death. It is contended by appellant that the failure to comply with these provisions precludes a recovery. We cannot agree with this contention. The letter written by plaintiff February 23, 1917, informed appellant of the death of her husband as the result of an accident, as to the date of which they had already been notified. This was received by appellant at Hartford, Connecticut. Appellant took affirmative action under this letter without questioning its sufficiency in any way. Within 60 days after the death of the insured, defendant was in full possession of all the facts that it desired or could have obtained from formal statements by the attending physicians. Their testimony was given at the coroner's inquest in the presence of representatives of the company. The examining physician of appellant was in constant communication with the insured and frequently visited him during his illness. The only object of the provision contained in the policy requiring proof was to afford the company evidence of the facts and circumstances necessary to establish a valid claim. They had this evidence before the insured died, through the constant attendance of their physician upon him, and it was acted upon by defendant. It was acted upon by the general agent of appellant within the said 60-day

period, who went to appellee's home to obtain further information. It was further acted upon by Dr. Duncan when he went to the home of appellee and presented to her, as he stated, a written demand for an autopsy. The record also shows that defendant's general agent had sundry negotiations with plaintiff with a view to the settlement of the claim. It has been held that where an insurance company through its agent attempts an adjustment of a loss, it is estopped to deny that it had proper notice of the loss. *Home Insurance & Banking Co. v. Myer*, 93 Ill. 271. We think that the filing of formal proofs of loss was waived by defendant on account of the acts and conduct of its general agent and its medical examiner as shown by the evidence (*Citizens' Ins. Co. v. Stoddard*, 197 Ill. 333; *Mahalek v. Merchants' Reserve Life Ins. Co.*, 205 Ill. App. 334), and by defendant's demand for an autopsy. This demand implied that defendant considered itself liable, in the event that death was caused by the accident independent of all other causes. *Fisher v. Travelers' Ins. Co.*, 124 Tenn. 511.

It is further contended by appellant that a recovery is prevented by the alleged refusal of plaintiff to permit defendant to hold an autopsy upon the body of the insured. This is one of the questions of fact which was left for the determination of the jury, whose verdict was adverse to defendant's claim. The provisions of the policy upon this subject gave the company the right to examine the body of the insured, as often as required in case of injury and the right to make an autopsy to determine the cause of death, and that in case of an autopsy being held otherwise than by a public officer in discharge of his duties, the company shall be given due notice thereof and an opportunity to participate therein. There was no requirement that defendant should be notified of the autopsy held by the coroner in discharge of his duties, but the evidence shows that defendant was given notice of this autopsy

and inquest and was represented there by its agents and attorneys. The evidence also showed that defendant had the full benefit of all information obtained from this autopsy and the microscopic and chemical examinations which followed. It seems to be a fair construction of the provisions of the policy upon this subject that only one autopsy was contemplated. Defendant availed itself of these proceedings by calling the coroner's physician as well as his chemist and microscopist who testified upon the trial on behalf of defendant. The question of whether or not plaintiff refused to allow an autopsy was one of the issues of fact submitted to the jury, and in view of the conflicting evidence upon this subject, we are not prepared to say that the verdict of the jury, which is, in effect, a finding that there was no such refusal, was not justified by the evidence. There is nothing before the court to indicate that the autopsy which was performed by the coroner's physician was not complete and nothing to indicate that any useful purpose would have been subserved by a further autopsy, especially in view of the fact that the affected portions of decedent's body had been removed for chemical and microscopic examination. Defendant had the full benefit of these examinations. While it was proper that the demand should be addressed to plaintiff, who was the widow and beneficiary under the policy, it is apparent that a demand made, as Dr. Duncan testified, after the remains had been prepared for the funeral could hardly have been met with an unhesitating compliance on the part of the widow. The demand called for an immediate compliance or refusal. The occasion was such that her refusal, even if she did refuse, which is denied, under the circumstances would not defeat any right of action on the policy. Defendant had been aware of the condition of insured for months, had a full knowledge of the proceedings taken by the coroner, and if a further autopsy had been deemed necessary a proper regard

for the occasion would indicate that the demand should have been made at an earlier date. We think that a due regard to propriety should have caused defendant to communicate its request to the widow through some other person and at an earlier date. *Johnson v. Bankers' Mut. Casualty Ins. Co.,* 129 Minn. 18. The demand made at the time and under the circumstances aforesaid was unreasonable on account of its uncertainty as to the time when it was proposed to make such autopsy, requiring, as it did, that the remains be held for several days to suit the convenience of defendant.

It remains only to consider the instructions which were given by the court at the request of plaintiff and which are alleged to have been so erroneous and misleading as to be prejudicial to defendant and to constitute reversible error. We find that eight instructions were given on behalf of plaintiff and twenty at the request of defendant. Viewing these instructions as a connected series, we believe that the jury were properly instructed as to the law applicable to the case. It is urged by appellant that the first instruction given at the request of defendant was erroneous. By this instruction the jury were informed that they are the sole judges of the facts in this case and that the court does not mean by any of its instructions to pass judgment upon any of the facts in the case or to intimate in any way what the verdict should be. We regard this instruction as purely cautionary and unobjectionable. In considering a similar instruction the Supreme Court held that in informing the jury that they were the sole judges of the facts these words were only preliminary to a correct statement of the law upon the subject of disregarding the testimony of a witness who had testified falsely regarding any material issue. *North American Restaurant & Oyster House v. McElligott,* 227 Ill. 317. Applying this reasoning to the instruction now under consideration, we are of the

opinion that the objectionable words contained in the first part of it must be regarded as only preliminary to a proper statement by the court to the effect that the court did not intend to pass upon the facts or to intimate in any way what the verdict should be.

The second instruction again advised the jury that they were the sole judges of the facts in the case. While we are aware that this instruction has been disapproved by numerous decisions of this court, our attention has not been called to any decision of either of the reviewing courts of this State holding that the instruction alone is reversible error, and we believe, from a consideration of all the instructions given in the case, that the jury were fully advised that it must be governed by the evidence and the instructions of the court in determining the facts of the case.

Complaint is also made of the third instruction given at the request of plaintiff, which is as follows:

"It is a question solely for you to decide in this case as to whether the death of William H. Barbour was due solely to bodily injury, the proximate result of external violent and accidental means within the conditions of the policy in question."

It is contended that this instruction was at variance with the provision of the policy which constituted the contract under consideration. We do not agree with this contention, and are of the opinion that defendant cannot be allowed to avail itself of any defect in the phraseology of the instruction for the reason that the jury were fully instructed as to this feature of the case by the fourth, fifth, sixth, seventh, ninth and twentieth instructions given at the request of defendant. These instructions repeated to the jury the terms of the policy and informed them, in substance, that the appellee could not recover for a death which was the result of anything other than accidental injuries.

Appellant also insists that the fifth instruction given

at the request of plaintiff relating to the burden of proof and advising the jury that if they found the evidence to have preponderated slightly in favor of plaintiff it would be sufficient for the jury to find the issues in her favor. Objection is made that this instruction was of a peremptory character and was vicious in failing to ignore the affirmative defenses interposed by defendant, which, if proved, were sufficient to defeat a recovery even though the evidence bearing upon plaintiff's case preponderated in her favor. The affirmative defenses referred to are, the failure to file formal proofs of death and the refusal to permit an autopsy. We do not regard the instruction in question as peremptory in its character, and while counsel for appellant asserts that the giving of this instruction constituted reversible error not obviated by other instructions, no authorities are cited in support of this assertion. The case of *Pardridge v. Cutler*, 168 Ill. 504, relates to a peremptory instruction. The same is true as to other authorities cited by appellant upon this point.

Complaint is also made of the seventh instruction, which states that the jury were the judges of the credibility of expert testimony the same as other witnesses. It is true that a similar instruction was held to be erroneous in the case of *Neville v. City of Chicago*, 191 Ill. App. 372, in which the court called attention to an instruction in which the jury were informed that they were not bound to take as absolutely true the testimony of any doctor or expert. We understand the law to be, that a different rule governs a jury in considering the opinions of witnesses from that which prevails in relation to the testimony of witnesses who swore to actual facts. It is the duty of the jury to accept, as true, testimony of the latter kind, unless the witnesses are impeached or otherwise discredited, but the jury may consider the opinions of expert witnesses for what they are worth. *Hall v. General Acc. Assur. Cor-*

*poration*, 16 Ga. App. 66. Applying this rule to the instruction under consideration, and bearing in mind that the only expert witnesses who testified were called on behalf of defendant, it would seem that the instruction which advised the jury to consider the credibility of these expert witnesses the same as other witnesses was more favorable to defendant than would have been the case if there had been a strict adherence to the law relating to the weight to be accorded expert testimony. While it is true that the latter part of the instruction, which stated that the jury were not bound to take as absolutely true the testimony of any expert, should have been eliminated, yet the instruction, taken as a whole, is favorable to defendant; and for that reason should not be urged as a ground for reversal.

The eighth instruction given at the request of defendant is of such length that we do not deem it advisable to reproduce the same in full. It relates to the subject of the alleged demand and refusal of an autopsy. It is not a peremptory instruction. While this instruction may be objectionable on the ground that it calls attention to particular features of the evidence, it gives no more prominence to this testimony than instruction number 17, which was given at the request of defendant and which is a peremptory instruction for the jury to find for defendant in case they believe from the evidence that an autopsy was refused. The verdict of the jury indicates that there was no such refusal.

We find no reversible error in the instructions. We are aware that some of these instructions which are alleged to be erroneous are subject to criticism and that the jury should be accurately instructed where the evidence is conflicting and the case is close or doubtful (*Rumbold v. Supreme Council Royal League*, 206 Ill. 513), but we are of the opinion that the evidence bearing upon the issues of fact involved in this case is not seriously conflicting and we do not regard the ques-

tions determined by the jury as close or doubtful.   The
verdict was abundantly justified by uncontradicted
and competent evidence.

The judgment of the circuit court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.