Joseph Wolen, Administrator of the Estate of Ignatz Sarapinas, Deceased, Appellee, v. Metropolitan Life Insurance Company, Appellant.

Gen. No. 38,895.

filed December 9, 1936.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM and WILLIAM S. ALLEN, of Chicago, of counsel.

EARL J. WALKER, of Chicago, for appellee.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment entered in the municipal court in favor of the plaintiff and against the defendant Metropolitan Life Insurance Company in the amount of $1,500 and costs. The suit was brought to recover on two life insurance policies issued by the defendant company on the life of Ignatz Sarapinas, deceased. The case was tried before the court without a jury.

Plaintiff contends that on May 18, 1931, the defendant company issued its life insurance policy upon the life of Ignatz Sarapinas, promising to pay the executors or administrators of said insured the sum of $500 in the event of the death of the insured and double that amount in the event of the death of the insured through external, violent and accidental means; that on June 1, 1931, the defendant company issued its life insurance policy upon the life of Ignatz Sarapinas, promising to pay the executors or administrators of said insured the sum of $250 in the event of the death of the insured and double that amount in the event of the death of the insured through external, violent and accidental means. The plaintiff claims that the said Ignatz Sarapinas died July 14, 1933, of injuries received from external violence while the policies were in full force and effect;

that plaintiff is the administrator of the estate of said Ignatz Sarapinas, deceased.

Defendant claims that the alleged insured did not meet his death as the result of bodily injuries sustained solely through external, violent and accidental means. but that his death was the result of a conflict with one Pete Makovich in which the alleged insured was the aggressor; that the age of the insured was misstated and that he represented his age to be 44 years but that his true age was 63 years; that if the defendant company is liable, such liability must be limited to the amount of insurance the premiums paid would have produced as the true age of the alleged insured on the dates of said applications. The defendant also contends that the death of the insured was contributed to by delirium tremens and septic meningitis and, therefore, under the provisions of the policy, the defendant company is not liable for the double indemnity sued for.

According to the evidence, Ignatz Sarapinas, the insured, lived in a room over a junk shop. He had a pushcart and picked up scrap paper and brought it back to the shop.

One of the witnesses, Wilbur Haynes, testified that he saw the insured where he was sleeping with blood on his face and in the morning they took him in a patrol car, but he did not know what happened. The insured had a bump on his head. He heard a noise and some swearing in the room, but did not know whether "Pete" made the noise or whether it was made by the insured.

The plaintiff Wolen testified that Peter Makovich was held for murder to the grand jury. Wolen filled out the blanks for the proof of death. He admitted that Pete Makovich was discharged in the criminal court.

It appears further from the testimony of the witness Haynes and others that the insured had appeared to be in normal health before the night he was assaulted, and that he had been regularly employed. Haynes also testified he was employed as the night watchman of the building where the insured lived. After midnight he heard a man whose voice he did not recognize cursing and swearing in loud tones in the room occupied by the insured as a bedroom, and that he went up to the room to find out the cause of the commotion; that he found "Pete" standing at the foot of the bed in which the insured slept and was then reclining; that Makovich said, "I killed him"; that he, Haynes, then examined the insured with his spotlight and found that his face was bloody and large "bumps" soon appeared on his head and that Sarapinas said, "Pete beat me up." The watchman testified that he ejected Makovich, but about a half hour later Makovich again gained admission to Sarapinas' room and "wanted to hit" Sarapinas so the watchman again ejected the intruder and fastened the street door. Haynes also testified that after the attack the insured was in bad shape physically and was removed to the County Hospital early the following morning; that Sarapinas was not of a quarrelsome nature and had not been known to have quarreled prior to the night in question.

The evidence further shows that while being removed from the premises by the police ambulance, the insured stated to some policeman who inquired how it happened, that "Pete did it"; that his assailant (Makovich) stated that he killed him; that a few days later Sarapinas died at the hospital and medical evidence for plaintiff, based upon a physical examination of the deceased, was clear that death was due to a brain injury caused by trauma.

The trial court struck from Haynes' testimony the statements made by the insured just after the assault

that "Pete beat me up" and "Pete did it" and also the statement of the assailant that "I killed him." In this we think the court erred. *Insurance Co. v. Mosley*, 75 U. S. 397; *Morris v. Central West Casualty Co.*, 351 Ill. 40, 46; *American Mut. Liability Ins. Co. v. Industrial Commission*, 342 Ill. 605.

It is contended by the defendant that the policies are wagering contracts for the reason that the policies were issued on the application of one Anton Balcunas, who paid the premiums whereby the insurance is voided. The application for the policies, as shown by the evidence, were made by the insured Ignatz Sarapinas and the agent's certificate shows that the relation of the applicant to the life proposed is "Self" and that "the party who will pay the premiums" is "Ignatz Sarapinas" himself and the policies in evidence provide that defendant pay the amounts of the respective policies to "the executor or administrator of the assured."

The witness Balcunas testified that he did not obtain the insurance nor did he pay the premiums. The defendant offered no proof that Balcunas did pay them, although Balcunas did state that he had loaned funds to the insured during the depression, but that the insured paid back the loan so made.

The evidence further shows that the policies contained an incontestable clause and the contestable period had expired. As was said by this court in *McMahon v. Feldman*, 139 Ill. App. 624, at page 626:

"The policy involved in this case is an ordinary life insurance policy payable to the estate of the insured. The insured had an insurable interest in his own life and had the right to procure a policy and have it payable to his estate or to any one whom he might appoint by will or any other mode." See also *Hawley v. Aetna Life Ins. Co.*, 291 Ill. 28; *Bruce v. Illinois Bankers Life Ass'n*, 207 Ill. App. 555, 560.

On the question as to whether or not the death of the insured was occasioned by accidental means, it appears that the only defense raised in the court below was that the insured was the aggressor in a fight, and that the death was contributed to by disease. According to the witnesses produced by the plaintiff Ignatz Sarapinas appeared to be in normal health on the day before he was assaulted and that he was in his room and that after the witness entered his room after hearing a noise he found Pete Makovich standing at the foot of the bed in which the insured slept and was then reclining; that Makovich said, "I killed him." There was evidence that the insured had been assaulted and that afterwards the assailant was ejected, but that he again gained admission to Sarapinas' room and was again ejected; that the insured was in a bad condition physically and was removed to the County Hospital early the following morning.

Medical evidence for the plaintiff, based upon a physical examination of the insured, showed that there was a brain injury caused by trauma.

There is not much doubt, as the evidence is overwhelmingly convincing, that the cause of Sarapinas' death was the beating which he received.

No contradictory evidence was produced by the defendant as to the manner in which the injuries to the insured were sustained, and we think the trial court was correct in finding for the plaintiff. *Franklin v. Continental Casualty Co.,* 184 Ill. App. 259, 261.

Under the circumstances—the injury to the insured which was followed by his death—the question as to who was the aggressor was one of fact for the trial court to determine. We cannot find any evidence in the record that the insured assailed Makovich or that he in any way contributed to the fatal injury.

Defendant further contends that the death of the insured was contributed to by delirium tremens and

septic meningitis. This was also an affirmative defense and the defendant must show that the death of Sarapinas resulted from this cause. *Rogers v. Prudential Ins. Co.*, 270 Ill. App. 515, 524; *Miner v. New Amsterdam Casualty Co.*, 220 Ill. App. 74.

There was no evidence that the insured used intoxicating liquor or that he was ever under the influence thereof.

A doctor in the County Hospital, who testified that he could not recall the case, had made a report at the time the insured was brought into the hospital in which he stated that Sarapinas' physical condition was very poor and that he was unable to talk or to answer questions. He also stated in his report that he had an *impression* that the patient had a skull fracture complicated by delirium tremens.

It further appears from the evidence that a doctor who did not see the insured, but who appeared as an expert, testified in response to a hypothetical question propounded by counsel for defendant, that in his opinion delirium tremens contribute to cause death and that delirium tremens could not be caused in the absence of a background of alcoholism. He admitted, however, that trauma could precipitate delirium tremens.

Dr. Kearns of the coroner's staff, who had devoted many years to making autopsies and determining causes of death of persons examined by him at post mortems, found that the insured had suffered brain hemorrhages, lacerations and other injuries due to trauma that were sufficient to cause his death; that the tearing or rupturing of the blood vessels of the brain as a result of trauma permitted the blood to escape into the brain area, and that in his opinion death resulted from traumatic cerebral laceration; that he found no evidence of alcoholism or septic meningitis and that there was no relation of bodily infirmity or

disease as a contributing cause of death. Doctor Kearns also stated that delirium tremens could be caused by trauma.

The question as to what was the cause of the death was one of fact and we think there was sufficient evidence to show that the court was justified in arriving at the conclusion that trauma was the cause of death without any contribution by disease. *Burns v. Metropolitan Life Ins. Co.*, 283 Ill. App. 431; *Barbour v. Aetna Life Ins. Co.*, 224 Ill. App. 312.

Defendant further claims that the insured understated his age in his application for insurance and evidence is introduced tending to show that at one time on one of his birthdays while celebrating he said that he was celebrating his 65th birthday. The burden of proving this difference of age was upon the defendant. *Grant v. Mutual Protective League*, 192 Ill. App. 4.

The statements made by the insured are presumed to be truthful and this defense is required to be proved by clear and cogent evidence. *Weininger v. Metropolitan Fire Ins. Co.*, 359 Ill. 584, 598.

It appears from the report of the defendant's agent which was offered in evidence that Sarapinas appeared to its representative to be 44 years of age and that the statement made by Sarapinas in the application that he would be "44 next birthday" was believed to be correct.

The witness Anton Balcunas, an employee of the Commonwealth Edison Company for many years, testified he was a fellow countryman of Sarapinas and had known the latter since he was a baby; that he had lived near and had grown up with the insured as a boy in the same village in Lithuania; that in later years Sarapinas had been a tenant of Balcunas in Chicago and that the insured was 47 or 48 years of age at the time of his death.

The witness Peter Bruzas, who was also a fellow countryman of the insured, testified that he knew the insured as a boy and that they were about the same age; that Sarapinas was about a year or a year and a half older than he and that he was 48 at the time of the trial.

On cross-examination the witness Haynes testified that Makovich was 30 or 35 and that Sarapinas appeared to be older.

The doctor who performed the post mortem examination upon Sarapinas estimated the age of the insured to be 60.

The witness Weinstein said Sarapinas looked young, but that he had told him at one time that he, Sarapinas was celebrating his 65th birthday with a bottle of moonshine. The trial judge chose to disregard this statement of the witness as incredible.

The trial judge who heard the evidence evidently did determine from the conflicting statements made at the trial that there was no misrepresentation as to the age of the insured and that there was no clear and convincing testimony offered by the defendant in support of its contentions as is required under the rule laid down in the case of *Weininger v. Metropolitan Fire Ins. Co.*, 359 Ill. 584.

From the evidence before us we are satisfied that the trial judge arrived at the correct conclusion and for the reasons herein given, the judgment of the municipal court is affirmed.

*Judgment affirmed.*

HEBEL and HALL, JJ., concur.