Catherine Letz, Appellee, v. World Insurance
Company, Appellant.

Gen. No. 9,621.

Opinion filed February 28, 1949. Released for publication March 28, 1949.

A. M. FITZGERALD, of Springfield, for appellant.

G. W. HORSLEY, of Springfield, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

This appeal seeks to reverse a judgment for $2,500 entered against the appellant, World Insurance Company, herein referred to as the defendant, on the verdict of a jury on an action brought by the appellee, Catherine Letz, herein referred to as the plaintiff, upon a policy of accident insurance issued by the de-

fendant to her deceased husband, Henry Letz, in which she was named beneficiary.

The complaint as amended charged that Henry Letz, in his lifetime, was issued a policy of insurance by the defendant company, and that on February 15, 1947, Henry Letz, the insured, suffered a fall resulting in the creation of a blood clot which moved into the heart of the insured and brought about his death on March 24, 1947; that such death was caused independently and exclusively of disease and arose entirely from the injury sustained in said fall. The prayer of the complaint asks for judgment for $2,500, the face value of the policy, together with $159 for hospital benefits provided by said policy.

The defendant company in its answer, admitted the issuance of a policy and admitted that on February 15, 1947, the insured suffered an accident, but denied that the accident created a blood clot which moved to the heart of the insured and brought about his death, and denied that the death arose from accidental causes, and alleged that death was due to causes not covered by the policy, and admitted that the plaintiff was entitled to receive the sum of $159 for hospital and other benefits, and averred that such amount had been tendered to the plaintiff in the form of a check, which is in the possession of the plaintiff.

The cause was tried before a jury in the circuit court of Sangamon county, the jury returning a verdict finding the issues for the plaintiff, and assessing said damages at $2,500. A motion for a new trial was denied and the appeal was perfected to this court.

In the trial of the cause the evidence disclosed that the policy of insurance was issued to the deceased, Henry Letz, under date of December 26, 1945; that the annual premium on said policy amounting to $60 was paid; that said policy provided, among other things, for the payment only in the event of death of the insured from bodily injuries and accident, as de-

fined in the policy as payable only "if insured sustains an injury, which independently and exclusively of disease and of all other causes," results in his death.

The evidence shows that Henry Letz accidentally fell down the basement stairs at his home on the morning of Saturday, February 15, 1947, prior to his leaving for work. The fall caused bruises on his elbow and shoulder and injury to his chest, and he complained of pains in his chest and of a headache. There was no evidence of an external swelling on the back of his head. His wife was obliged to help him change his clothing, and he went to his office at the City Hall in the City of Springfield, where he was employed as a health inspector. A fellow employee suggested that he see a Dr. Lindquist, who was a city physician and whose office was located across the hall from the insured's office. He went home in about an hour and remained in bed the rest of the day and the following day. He complained of his head and chest and could not stand on his feet because the pressure would hurt his foot. His wife applied hot applications to the bruises under the instructions of the physician, given over the telephone. The deceased returned to his office a few times between February 15 and March 2, not more than eight times, however, and would stay a short while on such visits and then return to his home.

On March 2 the insured felt better and he visited a neighborhood tavern to play cards, until about three p.m. On that same evening, about six p.m., he suffered an attack. Dr. Irwin was called to his home, where he examined him, made a tentative diagnosis of what was wrong with the insured, and diagnosed it as an embolism, which he attributed to his fall. The insured was then taken to the Memorial Hospital, where Dr. Irwin and Dr. Lindquist treated him until March 8, when they were dismissed from the case

and Dr. Barker continued treatments until March 24, 1947, the date of the insured's death. No autopsy was performed. The record of the Memorial Hospital and the death certificate, both signed by Dr. Barker, were introduced in evidence, and show that Henry Letz expired March 24, 1947, from ''coronary heart disease, coronary occlusion and embolic pneumonia,'' with pulmonary embolism as a complicating factor.

The only question of fact raised is whether or not the injuries sustained on February 15, 1947, caused the coronary occlusion. This court is confronted with the question as to whether or not the plaintiff's evidence was sufficient to justify the submission of the case to the jury.

One George Hodges testified on behalf of the plaintiff that he had been a fellow worker with the insured as health inspector for the City of Springfield, and that on February 15, 1947, the insured came to work and said he had fallen downstairs and hurt himself, that he said his foot hurt him, he limped, and that he evidenced pain and would feel the back of his head; that the witness advised him to go to Dr. Lindquist's office across the hall and consult the doctor; that the insured did not do any work after that, although he came to the office, not to exceed eight times before his death, each time complaining about having pain about his body, including the back of his neck.

Catherine J. Letz, the plaintiff, and widow of the insured, testified that the deceased was 55 years of age at time of death. He had been a deputy sheriff, and for three years before death had been a city health inspector. Prior to February 15, 1947, Mr. Letz had been active and went about his business as any healthy person; that he did the ordinary work around the house, removed ashes, cleaned the yard and tended a garden; had never complained of any illness except for influenza in 1944, when he lost five or six days

work. That with that one exception he never was absent from work, and bowled one night a week on the regular bowling team.

Mrs. Letz testified that Mr. Letz missed the first step as he started down to the basement and fell 18 steps. She went to his assistance and found that his shoe was torn, his elbow dirty and his shoulder scratched, and he complained of pains in his chest. He went to his office but returned home after about an hour and went to bed. The next day his shoulder and elbow were blue and red and his foot was swollen. She treated him for his chest and head, especially the back of his head. The marks on his elbow and foot afterwards turned purple. He spent most of the time in bed, although he went to the office about five times. He complained of intense pain in his chest and head all the time he was in the hospital. She could find no knot on the back of his head.

Dr. J. R. Irwin testified that he had treated Mr. Letz for influenza in 1944, and that prior to February 15, 1947, he saw Mr. Letz every day, but was not called upon to treat him until February 15, 1947, when Letz consulted him, stating that he had fallen. He saw two toes injured and his chest was swollen on the left side, and he complained of pain in his chest, head and foot. He was called to deceased's home on March 2, 1947. Letz was nearly dead, very pale and his pulse could hardly be felt. He advised hospitalization. He thought the patient had an embolism. It was his opinion at the time that the embolism was either in the heart or in the lungs, and attributed that condition to his fall, and that Henry Letz had blood clots prior to the embolism, and that the blood clots were caused from the fall at his home on February 15, 1947; that the insured on March 2, was suffering from a coronary embolism, which would cause a coronary occlusion, either partial or complete.

The testimony on the part of the defendant consisted of that given by two doctors who testified as experts, neither witness having seen or examined the deceased.

Dr. Richard F. Herndon testified that in his opinion the blood clots or embolism from which deceased was suffering on March 2 would not produce the embolic occlusion of the coronary artery.

Dr. Emmet F. Pearson testified that in his opinion the coronary occlusion was not the result of an embolism caused by the injuries received on February 15, 1947, and that his answer could be the same even though the deceased had previous good health and he had never had a heart condition before the accident. In his opinion the injuries could not produce an emboli which would occlude the coronary artery.

Dr. Lindquist and Dr. Barker were not called as witnesses.

The contention first urged by the defendant as to why this cause should be reversed is that the burden of proof is not only on the plaintiff to prove by a greater weight of the evidence that the death of the insured was caused by accidental means within the terms, meaning, and purport of the policy sued upon; but that the plaintiff also had the burden to prove by a greater weight of the evidence that the death was not caused by bodily infirmity or disease. The cases cited by the defendant to substantiate this point do not follow the law in Illinois, as set forth in the decisions of the courts of this State. It has been uniformly held in Illinois that where the defendant contended that the death of the insured was contributed to by bodily infirmity or disease, that such contention was an affirmative defense and that the defendant must prove that the death was from this cause. See *Wolen v. Metropolitan Life Ins. Co.*, 287 Ill. App. 415, where the court said, on pages 420 and 421:

"Defendant further contends that the death of the insured was contributed to by delirium tremens and septic meningitis. This was also an affirmative defense and the defendant must show that the death of Sarapinas resulted from this cause. *Rogers v. Prudential Ins. Co.*, 270 Ill. App. 515, 524; *Miner v. New Amsterdam Casualty Co.*, 220 Ill. App. 74.''

The *Wolen* case has been cited with approval in the case of *Silberman v. Washington Nat. Ins. Co.*, 329 Ill. App. 448, where the court said, on page 452:

"In the instant case the burden was on the defendant to prove that the age of the insured was such that at the time of his death the extended insurance provision of the policy had expired, and it has been consistently held that a defense of misstatement of age must be proved by clear and cogent evidence (*Weininger v. Metropolitan Fire Ins. Co.*, 359 Ill. 584; *Wolen v. Metropolitan Life Ins. Co.*, 287 Ill. App. 415).''

Appellant next calls attention to the fact that failure of the plaintiff to call Dr. Barker, one of the attending physicians, as a witness, raises the presumption that the testimony of such witness, if called, would have been unfavorable to the plaintiff.

It is argued by the plaintiff that all that Dr. Barker could testify to was contained in the hospital records and the death certificate, both of which were introduced into evidence without objection on the part of the defendant. The jury had before it the fact that Dr. Barker was not called as a witness and from its verdict it would appear that the jury attached no weight to that fact. The verdict of the jury settled that question. The court in *Hartford Life Ins. Co. v. Sherman*, 123 Ill. App. 202, at page 212, said:

"The failure to produce material testimony apparently in the power of the party, or to show inability to produce it, is liable to create a presumption or in-

ference in the minds of the jury that the proof is not offered because it would be unfavorable to it."

If the failure to produce Dr. Barker as a witness did raise any presumption in the minds of the jury, the verdict would indicate that such presumption was overcome.

The defendant contends that the deceased was suffering from a heart condition at the time of the accident and that the heart condition in conjunction with the accident caused the death, and that the plaintiff cannot recover under such state of facts. In support of this contention defendant cites a number of cases wherein it appeared that the insured was suffering from a heart condition or a bodily infirmity which, co-operating with the accident, did cause the death. Regardless of the defendant's contention as to the law, the facts in the instant case differ in that there is no proof to show that the deceased was suffering from any heart condition or infirmity prior to the date of the accident. On the contrary, the proof shows he was healthy and active. The courts of Illinois uniformly hold that where the deceased was suffering from a bodily infirmity, or may have been suffering from the same, at the time of the accident, that it is a question for the jury as to whether the insured died as a result of the bodily injuries, directly and independently from all other causes, and solely through external, violent and accidental means. In the case of *Klinke v. Great Northern Life Ins. Co.,* 318 Ill. App. 43, on page 49, the court said:

"The question of whether insured died as a result of bodily injuries effected directly and independently of all other causes and solely through external, violent and accidental means, was one of the facts for the jury to decide."

The evidence is in conflict as to whether or not the coronary occlusion could have been caused by

the accident and that the coronary occlusion was the cause of death. There was ample evidence in the record to submit that question to the jury.

■■ We are of the opinion that it was clearly a question for the jury as to whether insured died as a result of bodily injuries sustained in an accident which independently and exclusively of disease and other causes, resulted in his death. The jury found by its verdict that death was due to the accident, and this court is of the opinion that there was sufficient evidence in the record to sustain such a finding.

It cannot be disputed that the case at bar comes squarely within the reasoning used in the case of *Rebenstorf v. Metropolitan Life Ins. Co.*, 299 Ill. App. 71. In that case death followed an accident by more than three months, and an autopsy disclosed a chronic condition of the heart of some considerable standing and a chronic gall bladder trouble. The court, in affirming a judgment, said:

"In a case of this character why should not the real test be whether or not the injury itself was accidental? If the accident, when operating upon either a healthy or unhealthy body, causes death by putting in motion a chain of events which can be directly traced back to the accidental injury, why then should not such accident be considered the sole cause of the death?" . . . "We are impelled to hold that the question of whether Rebenstorf's death within the contemplation of the terms of the policy before us was caused solely as a result of his accidental injury was properly submitted to the jury and that there was sufficient evidence to warrant the jury in resolving this question in plaintiff's favor."

■ Defendant contends that the evidence produced in the case was not sufficient to submit an issue to the jury. We do not believe this point well taken in view of the testimony produced on the trial.

It is not disputed that the insured suffered external injuries to his body, and that as a result thereof he complained of pains in his chest and in the back of his head. It is undisputed that prior to the accident he was a healthy man, was able to and did the work of a normal man, both in the course of his regular employment and the ordinary duties around his home, and that he was active in bowling. The defendant produced no testimony and the record does not disclose that the deceased had any heart condition prior to the accident, nor was he suffering from any serious bodily infirmity.

In a similar case, *Scanlan v. Metropolitan Life Ins. Co.*, 93 F. (2d) 942, where the question was whether the insured's death was caused partially by his bodily infirmity, and the medical evidence was in conflict, the court said on page 945:

"The most defendant could ask the court to do upon this evidence was to submit the case to the jury, which was done."

Again, in the same case, the court on page 946 said:

"One may recover on an accident policy such as here in issue although the insured suffers from bodily infirmities. If the accident brought about conditions from which death resulted, the fact that the insured was ill, aged or infirm, or had bodily or mental infirmities, would not bar recovery provided the accident excited the bodily infirmity into activity and death resulted. If the infirmity alone would not have caused death, it cannot be said to have caused death when the immediate result was occasioned by an infirmity which became active only because of the accident. The infirmity may have made the insured less able to resist, but if the accident caused the condition which in turn affected the weak spot which did not resist as well as a healthy body, the cause is never-

theless the accident, and recovery cannot be avoided or evaded.''

The case of *Chamblin v. New York Life Ins. Co.,* 292 Ill. App. 532, cited by the plaintiff herein seems to parallel the case before us. That case was tried by the court without a jury and it developed from the testimony that decedent, while at work, fell, striking his back. He returned to work the following day but stayed in bed the next two days and went back to work and so continued until 18 days after the accident, when he died. The night before he died he bowled several games. The testimony showed him to have been active prior to the injury. An autopsy disclosed cause of death as an occlusion of the right coronary artery on account of a blood clot. Four experts called for plaintiff said the injury was sufficient to cause the occlusion. Five experts for the defendant said the occlusion could not have resulted from the fall. In affirming the judgment Appellate Court said:

''The expert proof bearing upon the vital question, being in conflict, it was for the trial judge, sitting without a jury, to find the fact, which he must do largely from the credibility of the witnesses and the weight to be attached to their testimony. *People v. Ristau,* 363 Ill. 583, 589, 2 N. E. (2d) 833.

''It is further the rule that, where the testimony merely conflicts, the reviewing court may not substitute its judgment for that of the trial court. *People v. Overby,* 362 Ill. 488, 200 N. E. 325; *People v. Martishuis,* 361 Ill. 178, 197 N. E. 531. In order to warrant interference with the finding, it must appear that the judgment is contrary to the manifest weight of the evidence. *Kuehne v. Malach,* 286 Ill. 120, 121 N. E. 391; *Tarjan v. Regelin,* 202 Ill. App. 320; *Union Foundry Works v. Columbia Iron & Steel Co.,* 112 Ill. App. 183.

''From a careful consideration of the record of testimony in this case, we cannot say that the trial judge's

finding of fact is manifestly or palpably against the weight of the evidence.''

The same rule applies to a verdict of a jury. In the case of *Bartels v. McGarvey*, 331 Ill. App. 275, the court on page 277 said:

''Where a fair question of fact is raised by the proof an appellate court will not set aside the jury's findings as being against the manifest weight of the evidence. (*Murphy v. Brichler*, 305 Ill. App. 6, 11; *Belcher v. Citizens Coach Co., Inc.*, 327 Ill. App. 618, 624.) The verdict of the jury must be clearly or palpably against and contrary to the manifest weight of the evidence before a reviewing court is warranted in setting it aside (*Goad v. Obernagel*, 302 Ill. App. 370, 373).''

The trial judge saw and heard the witnesses testify, as did the jury; he approved the verdict returned, and we have carefully examined the evidence produced on the trial, and it is our opinion that this court would not be warranted in saying that the verdict of the jury in this case was clearly and palpably against and contrary to the manifest weight of the evidence.

We hold, therefore, that the jury was justified in returning the verdict they did, that the trial court committed no error in denying defendant's motions for a directed verdict and denying defendant's motion to set aside the verdict and for a new trial, and that the judgment on the verdict should be and is affirmed.

*Judgment affirmed.*