No. 16,661.

SHARPE, ADMINISTRATRIX, v. THE COMMERCIAL TRAVELERS' MUTUAL ACCIDENT ASSOCIATION OF AMERICA.

ACCIDENT INSURANCE.—*Policy Excepting Liability for Injuries Caused Wholly or in Part from Disease.*—*Instructing Jury to Return Verdict for Party.*—Where a policy of accident insurance expressly withholds liability for "any bodily injury happening directly or indirectly in consequence of any disease;" also, for "any death or disability which may have been caused wholly or in part by bodily infirmities or disease," it was not error, in an action to collect the amount of the policy, to instruct the jury to return a verdict for defendant where the evidence shows, without doubt, by experts who conducted and witnessed a post mortem examination, that the brain and heart had been diseased for more than a year next before the death, by fatty degeneration, and that a tumor was found near the base of the brain, and that these conditions, with their attendant results, caused the fall and the injury.

SAME.—*Estoppel of Company.*—*Furnishing Blank Proofs.*—The fact that the beneficiary, at her repeated request, was furnished with blank proofs, the company all the while protesting against its liability, does not estop the company from interposing the above conditions of the policy.

Sharpe v. The Commercial Travelers' Mutual Accident Association.

PRACTICE.—*Exception.—Available Error.*—To an objection not reserved by an exception, no error can be made available.

EVIDENCE.—*Irrelevancy.—Rejection.*—There can be no error in rejecting evidence which is irrelevant to the issues.

From the Marion Superior Court.

*F. M. Finch* and *J. A. Finch,* for appellant.
*E. Ritter* and *H. L. Ritter,* for appellee.

HACKNEY, J.—The appellant sued upon a policy issued by the appellee to one Calvin L. Sharpe, insuring him against accidental injuries and providing an indemnity of twenty-five dollars per week during disability, not exceeding twenty-six consecutive weeks, and a sum not exceeding five thousand dollars in case of death from such injuries within the period of ninety days after sustaining such injuries.

One of the expressed conditions of said insurance was as follows: "That the benefits under this certificate shall not extend to hernia, or any bodily injury of which there shall be no external or visible sign. Nor to any bodily injury happening directly or indirectly in consequence of any disease, nor to any death or disability which may have been caused wholly or in part by bodily infirmities or disease, existing prior to or subsequent to the date of this certificate, nor to any case except where the injury is the proximate and sole cause of the death or disability, or where the injury may have happened while the member was or in consequence of his having been under the influence of intoxicating drinks, or to any death or personal injury unless the claimant under this certificate shall establish, by direct and positive proof, that the death or bodily injury was caused by external, violent, and accidental means, and was not the result of design on the part of the member."

The assured, on the 29th day of November, 1889,

while pursuing his business as a traveling salesman, sustained a heavy fall, the left side of his forehead violently striking the floor and producing an injury. If the injury was due to accident and caused the death, there is no question made of the appellee's liability under the terms of the policy. If the injury was not due to accident, it is not doubted that the terms of the policy deny a recovery. The evidence disclosed no external cause for the fall, and it appeared simply that while standing, or possibly stepping aside from the position in which he had been standing, the assured threw up his hands and fell to the floor. If this were all, there would exist the gravest doubts of a liability, since the burden rested upon the appellant to establish that the injury was due to accidental means. But the positive and uncontradicted evidence, as given by experts who conducted and witnessed a post-mortem examination, was that the brain and heart had been diseased for more than a year next before the death; that at the time of the autopsy a tumor was found near the base of the brain, and fatty degeneration of the brain had so far advanced that a great portion of the brain substance had nearly, if not entirely, been converted into fat, the convolutions of the brain were almost obliterated, and the base of the brain, especially the membranes and the bone, were in a diseased condition, the bone itself undergoing fatty change, and the fatty matter had become injected throughout the entire brain until it was very white and almost bloodless.

The heart was found to have undergone a general degeneration, the blood vessels were obstructed with fatty substance, the cavity was abnormally large, its muscular structure and fibers had been, to a great extent, destroyed and converted into the fatty matter, its walls had become weakened and the whole had become very soft;

the pericardium was lined with fat, and its fluid was diseased.

It was shown that, without doubt, these conditions, with their attendant results, caused the fall and the injury. There was a slight conflict in the evidence as to the extent of the injury, but with that we are not concerned, nor is it essential to our conclusion that the diseases so shown to have existed at the time of the injury were or were not the causes of the death.

The fact of persons meeting Mr. Sharpe from time to time and observing nothing in his appearance to indicate ill-health raises no conflict upon the evidence of the post-mortem examination as to the existence of fatty degeneration of the heart and brain. The evidence further shows, without conflict, that one suffering with fatty degeneration of the heart and brain may go about his business with no external signs of the disease further than may be manifested by dizziness, possibly causing the victim to fall.

It is enough, upon this branch of the case, that we find no conflict as to the cause of the injury, and that its cause was not the accident insured against.

The trial court instructed the jury to return a verdict in favor of the appellee, which was accordingly done. It was not error to so instruct the jury. *Faris* v. *Hoberg*, 134 Ind. 269.

This case is clearly distinguishable from that class of cases, some of which are cited by the appellant, holding that life insurance may be enforced notwithstanding the existence of some bodily infirmity contributing to a death from violence.

In the policy before us, insurance is expressly withheld for "any bodily injury happening directly or indirectly in consequence of any disease," and for "any death or disability which may have been caused wholly

or in part by bodily infirmities or disease." We know of no rule of construction under which these plain provisions of the policy may be held to include injuries and death happening "wholly or in part from bodily infirmities or disease."

But it is insisted by the appellant's learned counsel that the appellee was estopped to interpose this condition upon which the insurance was granted, for the reason, as claimed, that after the death of the member, an officer of the appellee, with knowledge of the facts disclosed by the post-mortem examination, "compelled and required the plaintiff, at great trouble and expense, to prepare and send to it repeated proofs of the death of Sharpe, * * * and thereby waived the right to insist on the presence of disease in Sharpe as a defense."

Numerous cases are cited to the effect that in those instances where fire insurance is taken upon the condition that additional insurance may not be taken without the consent of the companies giving the first insurance, the requirement of proofs, plans, etc., while possessing knowledge of the breach of the condition, is a waiver of the condition. We do not find it necessary to distinguish between the cases cited and the present, since we find that the evidence does not authorize, so fully, the premises stated by counsel from which they draw the conclusion of a waiver.

. The record discloses no demand or request for proofs. On the contrary, there is no room for conflict upon the proposition that the officer mentioned not only declared orally that the payment would be contested upon the condition stated in the policy, but, in answer to the first letter written by appellant for blanks upon which to make proofs, the officer wrote: "We do not know why you want claim blanks, as Mr. Sharpe's death was not caused by an accident of any kind whatever."

The next letter written by the officer to the appellant advised her of his information that Mr. Sharpe's injuries were not the result of accident, and did not cause his death, but that disease caused both the injuries and the death, and that while not being able to prevent her from putting in a claim, she should understand that the association was an accident association. It was also stated that proofs should contain the particulars of the post-mortem, signed by the surgeons.

In a letter of later date, inclosing, at her request, a blank for proofs, the officer repeated that a claim for death from natural causes could not be enforced, and that Mr. Sharpe had so regarded it, as seen by his failure to make a claim for weekly indemnity.

The appellant was notified, before suit and after the rejection of her claim by the directors of the appellee, that no allowance could be made to her, because of the condition so stated in the policy.

The facts disclose no element of an estoppel, even if we should concede the application of the authorities cited.

Upon the trial the appellant was called as a witness in her own behalf, but was first interrogated by counsel for appellee as to the fact that she was the administratrix of the estate, and upon her answer that she was such administratrix appellee's counsel objected to her competency as a witness, whereupon, and without an interrogatory by the appellant's counsel, the court remarked that the statute disqualified her as to any matter prior to her appointment. To this ruling, if it may be so characterized, there was no exception, but appellant's counsel, proceeded with two questions as to whether she had made proofs of death, and the amount of expense she had incurred in making such proofs. To these questions the

appellant objected "as above stated," and the court sustained the objections and gave the appellant exceptions. To the objection not reserved by an exception no error is made available. To the inquiry as to making proofs the ruling was harmless, since the proofs made were given in evidence, and since, as we have held, the merits of her case do not depend upon the proofs of death. As to the cost of making proofs, the exclusion of her evidence worked no hardship for the reason, as we have shown, that there was no feature of an estoppel in the case, and this evidence could have served only to support the theory of an estoppel.

Another question was asked the appellant as to whether Messrs. Finch & Finch, named in a letter exhibited to her, were her attorneys at the time the letter was written, and to this inquiry the court sustained an objection. The letter was not offered in evidence, or, if it was, we have no means of identifying it, and are not enabled to discover that the inquiry had any relevancy to the questions at issue. A letter, bearing the same date said to have been borne by that referred to, was introduced in evidence and purported to have been signed by Finch & Finch. This letter was a notice to the company of the death of Calvin L. Sharpe, and a request for proof blanks. If it may be said to be the letter so exhibited to the appellant as a witness, we observe no loss to the appellant in sustaining the appellee's objection, as above stated, since it appears that no question has been made against the sufficiency of the notice of death, and the merits of the case render that question of no importance.

The further questions discussed by counsel are upon the refusal of instructions asked by the appellant, and that the verdict is contrary to the law and to the evidence. Having held that the case presented by the evidence authorized the direction by the court to the jury

to return a verdict for the appellee, we have in effect decided these questions.

Finding no error in the record, the judgment of the superior court is affirmed.

Filed April 25, 1894; petition for a rehearing overruled Oct. 16, '94.