Robert P. Burns, Appellee, v. Metropolitan Life
Insurance Company, Appellant.

Gen. No. 38,482.

Opinion filed February 3, 1936.

Hoyne, O'Connor & Rubinkam, of Chicago, for appellant; Nathaniel Rubinkam and William S. Allen, of Chicago, of counsel.

Cummings & Wyman, of Chicago, for appellee; Cecil R. Smith and Elmer C. Grage, both of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by defendant from a judgment in the sum of $515 entered upon the finding of the court. The action was based upon two life insurance policies issued by defendant on the life of plaintiff's mother, Mary A. Burns. The policies provided for the payment of double indemnity in case of death by accidental means. The evidence shows that the insured died December 8, 1933, while the policy was in force, as a result of a fall to the sidewalk from the window of an apartment in which she lived. Defendant paid the life indemnity but resists payment of the accidental death benefit upon the theory that under the terms of the policy and upon the evidence submitted it is not liable therefor. The question was preserved for review by a motion of defendant at the close of all the evidence for a finding in its favor, which was denied.

Defendant did not offer any evidence. That submitted by plaintiff tended to show that the insured was 63 years of age and resided with plaintiff, her son, and his wife, at 3034 Leland avenue, Chicago. The apartment in which they lived was on the second floor. The window in the front extended over the sidewalk; the distance from the sill of the window to the sidewalk was about 16 feet. Mrs. Josephine Burns, the daughter-in-law of deceased, testified that about six o'clock in the evening of December 8th, while preparing dinner, she saw insured going toward the bathroom and heard her say she "thought she had to vomit." A few minutes thereafter she was informed that the body of insured was lying on the sidewalk in front of the apartment. The insured was unconscious, her head was bleeding, there was froth or foam on her mouth. She was taken to the Edgewater hospital where she died on the same day. She was attended by Dr. Howell, who prior to her death was her physician

and who testified that the bones of the skull of deceased were apparently crushed; that the injury was over the parietal occipital region of the head, and that the insured died from this crushing injury. There was no other medical testimony. Mrs. Burns testified that at times insured would lose control when she stooped over to pick up things. The witness had seen her fall over on several occasions.

Dr. Howell testified that he last saw insured prior to her death on October 13, 1933, when she visited his office; she then complained of paranesthesia of the left arm and leg, of headaches and of lightheadedness; he diagnosed the complaint as general arteriosclerosis and hypertension, the first of which means a general hardening of the arteries throughout the body, and the second an increase in blood pressure caused thereby. The doctor suggested that insured probably had a dizzy spell, might have raised the window for air, and in doing so pitched forward; he said high blood pressure increased the heart action, and when a patient was thus afflicted bending over would tend to send the blood to the head and that this might cause a fall.

The pertinent provision of the policies is as follows:

"Upon receipt of due proof that the insured . . . has sustained, after the date of this policy, bodily injuries solely through external violent and accidental means, resulting, directly and independently of all other causes, in the death of the insured within ninety days from the date of such bodily injuries . . . the company will pay in addition to any other sums due under this policy and subject to the provisions of this policy an accidental death benefit equal to the face amount of the insurance then payable at death. . . .

"No accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused by or contributed to, directly or indirectly, or wholly or

partially, by disease or by bodily or mental infirmity . . . ."

The contention of defendant is that plaintiff failed to maintain the burden of proof in that he failed to show, first, that the means by which plaintiff met her death was accidental in nature, and, second, that her death was not contributed to directly or indirectly by any disease or bodily infirmity. Defendant says that plaintiff alleged that the insured met her death by accidental means and not as a result of suicide; that it was necessary to allege this fact in order to bring the case within this provision of the policy sued upon— "No accidental death benefit will be paid if the death of the insured is the result of self-destruction . . . ." Defendant says that there is absolutely no proof whatever that the death of the insured did not result from suicide, and the inferences which may be drawn from the evidence are that she either jumped or fell from the window, and that in either case defendant is not liable. Defendant also says that its contention is that the death of the insured was contributed to by her disease; that is, that her high blood pressure caused her to fall out of the window, and that the fall resulted in her death. It is pointed out that plaintiff has the burden of proof; that it was incumbent upon him to prove that the death of the insured came within the provisions; that he failed to do this. Defendant says it was necessary for plaintiff to prove that insured sustained bodily injuries solely through external, violent and accidental means, resulting in her death; that if her injuries were contributed to by disease, they were not caused solely through external, violent and accidental means; that as there was no eyewitness, what happened between the time insured walked to the front of the apartment and when she was found on the sidewalk unconscious, must be supplied by inference; that in order for plaintiff to recover, it is necessary to

infer, first, that the insured fell out of the window solely through accidental means, and, second, that her fall was not contributed to in any way by her dizziness or high blood pressure; that such reasoning requires the basing of an inference on an inference, or a presumption on a presumption, which the courts have held in numerous decisions not to be permissible. *Globe Accident Ins. Co. v. Gerisch,* 163 Ill. 625; *Rumbold v. Supreme Council Royal League,* 206 Ill. 513; *Brown v. Maryland Casualty Co.,* 55 F. (2d) 159, are cited and relied on. Those cases are, however, distinguishable. See *Burns v. Prudential Ins. Co. of America,* 283 Ill. App. 442; Wigmore on Evidence, 2nd Ed., sec. 41; *Sturm v. Employers' Liability Assur. Corp.,* 212 Ill. App. 354; *Ohio Bldg. Safety Vault Co. v. Industrial Board,* 277 Ill. 96; 14 N. C. C. A. 224.

We think there was evidence from which the court could reasonably find that the means of death were accidental, not intentional. There is, in the first place, the presumption of law against self-destruction. This was pointed out in the *Sturm* case and has been mentioned in practically every case where the question of self-destruction has been in issue. The circumstantial evidence here, while not as full as it might have been, tends to show an absence of any will for self-destruction on the part of insured and, on the contrary, a will on her part to live. The mere fact that insured consulted a physician is a circumstance from which such inference may be fairly drawn. There is not a scintilla of evidence to the contrary. In *Fidelity & Casualty Co. v. Weise,* 182 Ill. 496, our Supreme Court said that while the presumption was only one of law, it might be sufficient prima facie to establish the fact that death occurred otherwise than by self-destruction and to require the production by defendant of evidence tending to show the contrary. In *Wilkinson v. Aetna Life Ins. Co.,* 240 Ill. 205, the court said that while

the burden of proof was on plaintiff to show that the injuries were accidental and not self-inflicted, this could be proved by circumstantial evidence, and that in connection therewith plaintiff could invoke the presumption that men do not ordinarily desire to die, creating an issue for the jury.

In the quite recent case of *Anderson v. Inter-State Business Men's Accident Ass'n*, 354 Ill. 538, the Supreme Court said:

"Where the insured suffers an injury which causes death and there is no proof in the record from which it can be determined whether the injury was accidental or self-inflicted, the presumption is that the injury was accidental and not self-inflicted."

We hold that there was evidence from which the court could reasonably find that the fall of deceased from the window was not intentional, was not voluntary, and therefore was accidental within the meaning of this provision of the policy.

Defendant undertakes to distinguish between the accident itself and the means whereby it was brought about, citing *Landress v. Phoenix Mut. Life Ins. Co.*, 291 U. S. 491, 78 L. Ed. 934. The issue in that case was whether the death of the insured as a result of sunstroke was under the circumstances brought about by accidental means, and the court, undertaking to distinguish between the means and the accident, held that it was not. Cardozo, J., dissenting, warned: "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." The prophecy seems well on the way toward fulfillment. *Donohue v. Washington Nat. Ins. Co.*, 259 Ky. 611, 82 S. W. (2d) 780; *Provident Life & Accident Ins. Co. v. Green*, 172 Okla. 591, 46 P. (2d) 372; *Griswold v. Metropolitan Life Ins. Co.*, — Vt. —, 180 Atl. 649.

Under the law and the evidence, we think the court could reasonably find that insured met her death

"solely through external, violent and accidental means," within the meaning of the insurance policy.

The second question arising on the record is whether the death of insured was caused by or contributed to directly or indirectly, or wholly or partially, by disease or by bodily or mental infirmity; in other words, whether within the meaning of the law, disease or bodily or mental infirmity can be said to have been a contributing cause to the death of insured. The cases, as we understand them, are to the effect that under similar circumstances it could not be reasonably found that any bodily disease or mental infirmity of the insured was a contributing cause. To that effect are *Winspear v. Accident Ins. Co.*, 6 Q. B. D. 42, where the insured was seized with an apoplectic fit, fell into a stream and was drowned, and defendant was held liable; *Lawrence v. Accidental Ins. Co.*, 7 Q. B. D. 216, where the insured while standing on the platform of a railway station was suddenly taken with a fit and fell in front of a moving locomotive and was killed, and the company held liable; *Freeman v. Mercantile Mut. Accident Ass'n*, 156 Mass. 351, 30 N. E. 1013, where the insured died from peritonitis brought about as the result of a fall; *Bohaker v. Travelers' Ins. Co.*, 215 Mass. 32, where the insured being delirious from typhoid fever was momentarily left alone by his nurse and in her absence fell from a window to the ground, receiving injuries from which he died, and the question as to whether the disease or accident caused his death was held to be for the jury; *Manufacturers' Accident Indemnity Co. v. Dorgan*, 58 Fed. 945, where the evidence tended to show that the insured while suffering from a defective heart and while fishing in a brook fell into it and was drowned, and the question of whether the disease contributed to his death was held to be for the jury.

These cases were all decided upon the theory that the maxim, *Causa proxima non remota spectatur,* was

applicable. In *Lawrence v. Accidental Ins. Co.*, 7 Q. B. D. 216, the opinion quotes with approval Lord Bacon's maxim, "It were infinite for the law to consider the causes of causes, and their impulsions one of another; therefore it contenteth itself with the immediate cause."

This court in *Sturm v. Employers' Liability Assurance Corp.*, 212 Ill. App. 354, a case which cannot be distinguished from this one, follows and approves the foregoing cases. In that case the policy defined injury to mean "bodily injuries sustained during the term of this policy, solely and independently of all other causes through external, violent and accidental means." The evidence showed that insured died in the bathtub of his home in Chicago, and the issue of fact was whether his death was from accidental drowning or disease. There was no eyewitness. The evidence as to the manner of his death was wholly circumstantial. The insured was past 67 years of age, somewhat corpulent and full-blooded. In the 15 months prior to his death he had suffered from two attacks of facial erysipelas but from no other illness. The morning of his death insured went to the bathroom, turned on the water, went out to the hall and got some towels; he then got into the bathtub. His wife went to the bathroom, saw him sitting in the tub, which was half full of water; while the water ran he lathered his face preparatory to shaving; she left, telling him she would get breakfast, which she then prepared, and insured not appearing as soon as expected, she went into the bathroom where she found him dead, the tub being full of water; the body was entirely under water, the knees up and the head leaned "forward on his chin"; the water was a foot deep over his head; the face was unshaven; the safety razor was at the bottom of the bathtub; there was no hair or soap on the blade. A doctor summoned tried artificial respiration without result;

a dark colored liquid came from the mouth and a latherlike sputum from the corners of the mouth. A post mortem disclosed arteriosclerosis of the brain, in the arch of the aorta and of the valves of the heart; there were fatty changes in the liver, the kidneys were diseased with chronic interstitial nephritis and with cystic degeneration. There was medical opinion to the effect that deceased did not come to his death by drowning and that the cause of death was chronic myocarditis complicated by chronic nephritis. There was also some medical evidence tending to show that the death was by drowning. Instructions stating the law to be that if disease contributed to the death of the insured plaintiff could not recover were offered and refused. The court, affirming the judgment for plaintiff, said:

"In view of the facts in this case, such instructions were inapt. Even though the insured were diseased and his abnormal condition led to his falling into the water and being drowned—and so in a sense contributed to his death—it is not the law that that contribution of disease to his death would prevent the plaintiff from recovering. The law distinguishes between so-called successive causes as between successive physical conditions; and the proximate excludes the more remote. If the deceased came to his death by drowning then, legally, that was the sole cause of his death. *Bohaker v. Travelers' Ins. Co.,* 215 Mass. 32; *Manufacturers' Accident Indemnity Co. v. Dorgan,* 7 C. C. A. 581, 58 Fed. 945; *Lawrence v. Accidental Ins. Co.,* L. R. 7 Q. B. Div. 216; *Winspear v. Accident Ins. Co.,* L. R. 6 Q. B. Div. 42."

Defendant relies much on the cases of *Moore v. Illinois Commercial Men's Ass'n,* 166 Ill. App. 38, and *Illinois Commercial Men's Ass'n v. Parks,* 179 Fed. 794. In the *Moore* case the insured was found on the floor of his hotel room completely paralyzed and he died within an hour thereafter. An examination of

the body externally did not disclose any injury. An autopsy disclosed a blood clot at the base of the brain, but the exact spot of the lesion which caused the hemorrhage was not found. In the trial court there was a verdict for defendant on which judgment was entered, which was affirmed on appeal. The uncontradicted evidence showed that insured came to his death as a result alone of the disease rather than any accidental cause.

In *Illinois Commercial Men's Ass'n v. Parks* (as in the *Moore* case) the court was required to construe a by-law which provided for non-liability for any injury which should "occur as the result, wholly or partially, directly or indirectly," on account of disease or bodily or mental infirmity, etc. The opinion states that the burden of proof was upon plaintiff to show not only that the death which ensued was accidental but also that the accidental injury was the sole cause of death, independently of any pre-existing disease or bodily infirmity as a contributing cause, and the court said:

"We are of opinion, therefore, that the ultimate issue of liability under this contract, in the event of a finding of accidental injury, is not whether such injury was the proximate cause of death, but whether it was the efficient cause, without the intervention of pre-existing disease or bodily infirmity as a co-operative cause of death—within the extended line of authorities cited under analogous provisions, whereof the following are deemed sufficient examples: *National Masonic Acc. Ass'n v. Shryock*, 73 Fed. 774, 775, 20 C. C. A. 3; *Commercial Trav. Mut. Acc. Ass'n v. Fulton*, 79 Fed. 423, 426, 430, 24 C. C. A. 654; *Sharpe v. Com. Trav. Mut. Acc. Ass'n*, 139 Ind. 92, 93, 95, 37 N. E. 353; *Binder v. National Masonic Acc. Ass'n*, 127 Iowa, 25, 102 N. W. 190, 194; *White v. Standard Life & Acc. Ins. Co.*, 95 Minn. 77, 103 N. W. 735, 736, 884."

In that case the insured fell on the sidewalk, striking the corner of an iron hitching post, and death ensued in a few minutes; an autopsy disclosed a diseased condition of heart and kidneys, and there was conflicting medical testimony as to the cause of death. That question was, under the circumstances of the case, held to be a question for the jury, and because of an instruction inconsistent therewith the judgment was reversed and the cause remanded. Under either line of cases we think that here the question of ultimate liability was one of fact, and that the finding of the court must be regarded as conclusive. Indeed, we are inclined to the opinion that under the uncontradicted evidence here, it cannot be said that there is any proof from which the court could reasonably find that disease or bodily or mental infirmity was either an "immediate" or "cooperative" cause of the death of the insured. The means of death being accidental and the death being the immediate result of these accidental means, the accident was the legal cause of death and plaintiff is entitled to recover. The judgment is therefore affirmed.

*Affirmed.*

McSurely, P. J., concurs.

O'Connor, J., specially concurring: I agree with the result for the reasons stated in the *Parks* case.