Robert P. Burns, Individually and Robert P. Burns as
Administrator of the Estate of Mary A. Burns,
Deceased, Appellee, v. The Prudential Insurance
Company of America, Appellant.

Gen. No. 38,483.

Opinion filed February 3, 1936.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM and WILLIAM S. ALLEN, of Chicago, of counsel.

CUMMINGS & WYMAN, of Chicago, for appellee; CECIL R. SMITH and ELMER C. GRAGE, both of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit on two life insurance policies issued by defendant on the life of Mary A. Burns, one for $265 and the other for $215. Each policy contained a provision known as the "Double Indemnity" provision. The face amount of each policy was

paid but defendant denied that it was liable under the double indemnity provision, and this suit was brought. There was a trial before the court without a jury, and a finding and judgment in plaintiff's favor for $480, the amount of his claim, and defendant appeals.

The record discloses that the insured, Mary A. Burns, 63 years of age, resided with her son and daughter-in-law in a second floor apartment in Chicago. The building abuts upon the sidewalk and there is a front window in the apartment, 16 feet from the sidewalk. About six o'clock in the evening of December 8, 1933, the daughter-in-law was preparing dinner and she saw the insured, who said she "thought she had to vomit," go into the bathroom. Apparently shortly thereafter the daughter-in-law saw her leaving the bathroom, and after a short time someone rapped on the door of the apartment and told her that her mother-in-law had been found on the sidewalk in front of the apartment. Her head was bloody and there was froth or foam on her mouth; she was taken to the hospital where she died about an hour after the accident.

The evidence further shows that during the year prior to her death a doctor called several times to see the insured; that she had headaches and dizzy spells; that "if she stooped to pick up anything she would tip right over." The doctor told her she should be careful and not overdo. The daughter-in-law testified she saw her bend over and fall on a number of occasions.

Dr. Howell, the family physician, testified that he had known Mrs. Burns for about seven or eight years; that the last time he treated her was on October 13, 1933, at his office and that she was complaining of "para-anesthesia of the left arm and leg and a feeling of lightheadedness and headache"; that at that

time he gave her a general physical examination; that she complained of being lightheaded and dizzy; that he concluded she was suffering from arteriosclerosis and hypertension; that the former means hardening of the arteries and the latter an increase in blood pressure caused by hardening of the arteries; that he saw Mrs. Burns about 6:30 o'clock the evening of the accident and that she expired about a half hour afterward; that a year before she died he treated her about three times; that Mrs. Burns may have had one of her dizzy spells and in getting air from the window she may have pitched forward, and that in his opinion she died from a crushing injury to her head.

The pertinent provisions of the policy are, "Upon receipt of due proof that the Insured . . . has sustained bodily injury, solely through external, violent and accidental means, . . . resulting in the death of the Insured . . . [the Insurance company] will pay in addition to any other sums due under the Policy . . . an Accidental Death Benefit equal to the face amount of insurance. . . .

"No Accidental Death Benefit will be paid if the death of the Insured resulted from suicide."

The sole contention made by defendant as to why the judgment should be reversed, as stated by its counsel, is, "The plaintiff failed to prove that the death of the insured was the result of accidental means and not contributed to by her disease and therefore is not entitled to recover." On the other hand, counsel for plaintiff says, "The plaintiff has proved that the death of the insured was the result of an accident which was of such nature that it caused death, regardless of any diseased condition which may have been present," and therefore the judgment should be affirmed.

Counsel for defendant, in support of their contention as above stated, say, "The question is *not* whether

a fall caused the injury which in turn was the cause of her death, but whether the fall was *solely* the result of accidental means and was not contributed to by disease. However, the plaintiff did not introduce any evidence as to *the reason for the fall,* except the evidence of her disease.'' We are unable to agree with this argument. The provision of the policy above quoted does not provide that no recovery can be had if the assured's death was ''contributed to by disease.'' There is no such limitation in the policy.

The question for decision is whether the insured's death resulted ''solely through external, violent and accidental means.'' That her death resulted ''solely through external and violent'' means is undisputed and under the evidence the presumption is that the insured did not commit suicide. *Anderson v. Interstate Accident Ass'n,* 354 Ill. 538. Therefore, it follows that the assured died as the result of an accident in falling to the sidewalk.

Counsel for defendant say that, ''In order for the plaintiff to recover it is necessary to infer first, that the insured fell out of the window solely through external, violent and accidental means; and, second, that her fall was not contributed to in any way by her dizziness or high blood pressure. To claim that the evidence shows this is basing an inference on an inference, or a presumption upon a presumption, which has been repeatedly held by our courts to be inadmissible.''

There are cases that seem to sustain counsel's contention that it is contrary to the law to base an inference on an inference; but we think that is not the law. Sec. 41, Wigmore on Evidence, 2nd Ed.; *Sturm v. Employers' Liability Assur. Corp.,* 212 Ill. App. 354.

In Wigmore on Evidence, the author in the section cited, says: ''It was once suggested that 'an inference upon an inference' will not be permitted, i. e., that a

fact desired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by a few Courts, and sometimes actually enforced. There is no such rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. For example, on a charge of murder, the defendant's gun is found discharged; from this we infer that he discharged it; and from this we infer that it was his bullet which struck and killed the deceased. Or, the defendant is shown to have been sharpening a knife; from this we argue that he had a design to use it upon the deceased; and from this we argue that the fatal stab was the result of this design. In these and innumerable daily instances we build up inference upon inference, and yet no Court ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon."

In the *Sturm* case (212 Ill. App. 354) we said (p. 363): "If any one or more of those inferences is doubtful, the ultimate is doubtful. Of course, an inference from an inference, and then a third and fourth may, under certain circumstances, be admissible (*Ohio Building Safety Vault Co. v. Industrial Board,* 277 Ill. 96) [14 N. C. C. A. 224], but the more remote the inference the more enfeebled its probative force."

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.