CARTER, ET AL. *v.* AETNA LIFE INSURANCE COMPANY, ET AL.

[No. 27,374. Filed May 13, 1940. Rehearing denied June 10, 1940.]

*McTurnan & Higgins,* of Indianapolis; and *Otis E. Gulley,* of Danville, for appellants.

*Slaymaker, Merrell & Locke,* of Indianapolis; and *Edgar M. Blessing,* of Danville, for appellees.

SWAIM, J.—This was an action brought to recover on the double indemnity provision of a policy of insurance, issued by the appellee upon the life of George W. Price, which action was predicated on the theory that the insured suffered an accidental fall in his bathroom on January 8, 1932, which inflicted such injuries as were the proximate and dominant cause of his death. The jury returned a verdict in favor of the appellee insurance company, and from the judgment entered thereon this appeal is prosecuted.

The only error assigned was the action of the trial court in overruling the appellants' motion for a new trial, which stated as grounds therefor the giving and refusing of certain instructions and the refusal of the trial court to admit certain evidence over the objection of the defendant.

Appellants complain of the giving of instruction numbered 7 by the court on its own motion, by which the jury was instructed as to the amount and method of payment in the event the appellee was found to be liable under said double indemnity provision. Since the jury found that there was no liability on the part of the appellee any possible error in an instruction as to the amount or manner of payment is necessarily harmless. *Sunman* v. *Clark* (1889), 120 Ind. 142, 145, 22 N. E. 113; *Cousins* v. *Glassburn* (1940), 216 Ind. 431, 24 N. E. (2d) 1103.

The principal question for our determination in this case is the correct interpretation of the double indemnity provision of the policy, the essential parts of which are as follows:

"If the death of the insured . . . results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means within ninety days from the occurrence of such accident, and if such accident is

evidenced by a visible contusion or wound on the exterior of the body (except in case of . . . internal injuries revealed by an autopsy) and if death does not result . . . directly or indirectly from disease in any form, then the Company will pay a sum equal to the sum described in this policy as the sum insured, in addition thereto."

The essential facts which the evidence tends to establish as to the injury and death of the insured are as follows: The insured, while in Chicago on January 6, 1932, was treated by a physician and nurse for an infection around a hair follicle in the lower part of his right nostril. Pus was draining from the infected area. His nose and eyes were swollen, his right eye practically closed. Treatment by the physician and nurse apparently improved insured's condition and that evening he returned to his home in Indianapolis. The next morning, at his home, he was examined by his local physician, who diagnosed the infection as being a boil which was draining satisfactorily. The local doctor called on the insured again that evening and also the next morning, January 8th at which time the doctor expressed the opinion that the insured might safely start on a trip to Texas that evening. After the doctor had left the home of the insured on the morning of the last mentioned date the insured fell against a radiator in his bathroom and injured the left side of his face and head around his left eye, his forehead between his eyes and one foot. His doctor testified that two days later the insured showed symptoms of erysipelas below the left eye; that the right side of his face was not involved; that on the following day an anti-erysipelas serum, which was administered to insured, caused a severe reaction; that the insured became progressively worse and died on January 19th, and that in the doctor's opinion the insured's death was caused by the erysipelas with its

complications, the most important cause of which was the fall. Two pathologists who performed an autopsy testified that the erysipelas organism or germ was not found in the body of the insured, but that they did find, throughout the body, staphylococcus, pus producing germs, and evidence that at the time of insured's death the boil in his nose was still draining; that there was no apparent injury to his skull; that in their opinion the cause of death was staphylococci septicemia with abscess formation which started in the lesion or boil in the nose; and that they did not believe that there was any relation between the accidental fall, the erysipelas and the death. Their opinion as to the cause of the death was also supported by the testimony of other doctors who were specialists in the diseases of the ear, nose and throat.

Appellants insist that instruction numbered 8, given by the court of its own motion, was incorrect in that it stated that in order to entitle the plaintiffs to recover under the double indemnity provisions of the policy they must prove "by a preponderance of all the evidence: first, that Mr. Price sustained bodily injury; second, that it was effected solely through external, violent and accidental means; third, that it was evidenced by a visible contusion or wound on the exterior of his body or was revealed by an autopsy, if internal; fourth, that his death resulted within ninety days from the occurrence of any such accident; and fifth, that any such accident was the cause of his death; and sixth, that his death did not result, directly or indirectly, from disease in any form." It will be noted that in the latter part of said instruction the court recited verbatim from the double indemnity provision without any attempt to interpret or explain such provision. This was not such a mandatory instruction as

purported to give to the jury the entire law on the subject and an error in which could be cured only by a withdrawal of the instruction. In examining instructions we must consider them as a whole in determining whether error has been committed in the giving thereof. "No instruction is to be regarded as independent and isolated, but rather as a related and connected part of the entire charge." *Indianapolis Traction, etc., Co.* v. *Thornburg* (1920), 74 Ind. App. 642, 646, 125 N. E. 57. In the instant case the jury was expressly told by the court in instruction numbered 1 that it must consider the instructions as a whole and that no single instruction gave all of the law which they must follow.

Instruction numbered 9, given by the court of its own motion, expressly explained and interpreted instruction numbered 8 by telling the jury,

"To enable you to determine whether any such injury was the cause of Mr. Price's death, you need to know the rules of law in that particular which you must apply to the evidence which has been introduced.

"To have been the cause of his death any injury which Mr. Price may have sustained must have been the originating cause, that is, it must have been the first in point of time in the chain of events which produced his death. If at the time of such injury he was in an impaired state of health from any other cause but such state was not a concurring or a contributing cause of his death or one of a chain of events which produced it and such injury alone served efficiently, dominantly and proximately to produce his death when it did occur, such injury is to be regarded as the originating cause of death.

"In addition to the requirement that any such injury must have been the originating factor in order to be regarded as the cause of his death, it must have been of a kind sufficient to produce his death in his then condition. It must also have been the controlling or dominant cause and must have

served in and of itself to produce his death in natural sequence when it did occur. It must also have been the cause which in a natural and continuous sequence, unbroken by any new and independent cause, served to produce his death and but for which his death would not have occurred when it did occur."

These rules of law were further explained and amplified by the court in instructions numbered 10, 11, 12, 13, 14 and 15 given by the court on its own motion.

In their brief the appellants insist that "The legal construction of the insurance policy provision . . . is that the cause of death referred to and insured against means and is the proximate and dominant cause, not an indirect or remote cause." A careful consideration of all of the court's instructions on this subject reveals the fact that the court did instruct the jury that there could be a recovery on the double indemnity provision of the policy only in the event the accidental injury was the proximate and dominant cause of death, and that disease, which was only a remote cause of death, could not defeat recovery.

In instruction numbered 10 the court explained the legal effect of death resulting immediately from disease or conditions which in turn resulted from the accidental injury in these words, ". . . it is likewise immaterial that some other condition may have arisen after his injury and also itself sufficient to produce his death if that condition was itself caused solely by such injury. In the latter case you would be entitled to regard his injury as the cause of his death and to regard the after occurring condition as a step in its progress."

In further explaining the meaning of an accidental injury being the proximate and dominant cause of the death the court said, in its instruction numbered 11,

". . . and if you so find that such injury in natural and continuous sequence, unbroken by any new and independent cause, served to produce his death and that but for such injury his death would not have occurred when it did occur, then you should find that such injury was the cause of Mr. Price's death."

And further, in instruction numbered 12, the court said ". . . or if you so find that such injury did not serve, in a natural and continuous sequence, unbroken by any new and independent cause, to produce his death and that his death would have occurred when it did occur without regard to such injury, then you should find that such injury was not the cause of Mr. Price's death."

By instruction numbered 13, given by the court on its own motion, it was explained to the jury that if the insured at the time of his injury was in an impaired state of health which was the cause or a concurring or a contributing cause of his death "and that his death was not accelerated by such injury" and further that if, after the injury, he suffered an illness which was not "caused by such injury and which *alone* caused his death or but for which his death would not have occurred" then such injury could not be regarded as a cause of his death.

Instruction numbered 15, given by the court of its own motion, expressly told the jury that the clause "if death does not result directly or indirectly from disease in any form" should not be interpreted to defeat recovery by the insured "if some disease which he then had or thereafter acquired was merely a remote cause" of his death.

This court has held that an insurance policy which insures against death resulting directly and independ-

ently of all other causes from bodily injuries effected solely through external, violent and acci- dental means refers only to proximate, and not remote, causes. *Continental Casualty Co.* v. *Lloyd* (1905), 165 Ind. 52, 60, 61, 73 N. E. 824.

Where such a policy has an additional provision expressly and positively excluding liability "when disease, defect or bodily infirmity is a contributing cause of death," the courts of this and other states have recognized that such additional clause adds further limitations to the liability of the company. *Sharpe* v. *The Commercial Travelers' Mut. Acc. Assn.* (1894), 139 Ind. 92, 96, 37 N. E. 353; *Railway Mail Assn.* v. *Schrader* (1939), 107 Ind. App. 235, 19 N. E. (2d) 887. In the instant case, however, the additional clause is not so broad and only excludes recovery where death *results* directly or indirectly from disease in any form. We are of the opinion that "result" as used in this clause refers only to a proximate and not to a remote cause. We are further of the opinion that the instructions of the court, when considered as a whole, fairly and correctly instructed the jury on this question.

The appellants also complain of the court's refusal to give instructions numbered 6, 9, 10, 11 and 12 tendered by the plaintiff. The substance of these tendered instructions was fully and fairly covered by the instructions given by the court, consequently it was not error for the court to refuse to give the above enumerated instructions.

Appellants insist that instruction numbered 8 tendered by the defendant and given by the court was erroneous in that it instructed the jury that "if they cannot agree upon and determine the issue of fact presented their verdict should then be returned for defendant." We do not believe this to be

a fair or reasonable interpretation of the instruction which was as follows:

"The court instructs you that if the jury shall not be able to determine from all of the evidence in this case what was the proximate cause of the death of the said George W. Price, then the verdict of the jury should be for the defendant, Aetna Life Insurance Company."

The burden was upon the plaintiff to establish by a preponderance of the evidence that the accidental injury was the proximate cause of death. Failing in this the plaintiff was not entitled to recover. The instruction in question could not be fairly interpreted as telling the jury more than this.

The final contention of appellant was that the court erred in sustaining the defendant's objection to the admission of the opinion testimony of a doctor offered on rebuttal by which testimony the plaintiff offered to prove that the thrombosis of the cavernous sinus was a complication, or result, of the erysipelas rather than the boil. In their case in chief, plaintiffs had introduced opinion evidence tending to prove that the accidental injury caused the erysipelas which in turn resulted in the death and that the boil was not the cause of the death. No reason was given by plaintiffs for withholding part of their evidence on this question. Permission for them to introduce this evidence in rebuttal was within the discretion of the trial court. Only an abuse of such discretion would justify a reversal. We cannot say that the court here abused its discretionary power. *Stalker* v. *Breeze* (1917), 186 Ind. 221, 225, 114 N. E. 986; *Stewart* v. *Smith* (1887), 111 Ind. 526, 527, 13 N. E. 48.

Finding no reversible error the judgment of the trial court is affirmed.

NOTE.—Reported in 27 N. E. (2d) 75.