PALMER *v.* JERRY MICHAEL DECKER B/N/F
A. LINDEN DECKER.

[No. 370 S 50. Filed March 6, 1970.]

---

*Arthur A. May, Crumpacker, May, Levy & Searer,* of South Bend, for appellant.

*Benjamin Piser, Piser & Cox,* of South Bend, for appellees.

DeBruler, J.—This appeal was first made to the Indiana Appellate Court which rendered an opinion reported as *Palmer* v. *Decker, et al.* (1968), 143 Ind. App. 478, 241 N. E. 2d 381, reversing the judgment of the trial court and remanding the cause for a new trial. The appellee below has petitioned this Court for transfer, which petition is now granted and the opinion and order of the Appellate Court is now ordered vacated.

This cause was instituted in the St. Joseph Superior Court by the filing of a complaint entitled "Complaint for Personal Injuries and Damages" alleging that the appellant had negli-

gently caused appellee to lose the sight of his left eye due to an injury caused by a BB which had been fired from an air rifle by the appellant. The cause was tried by a jury which returned a verdict for the appellee in the sum of $25,000.00 and the appellee's parents in the sum of $2,000.00.

The appellant's first allegation of error is that the verdict of the jury was not sustained by sufficient evidence and was contrary to law and that the court erred in failing to direct a verdict at the conclusion of all of the evidence for the appellant. In reviewing the evidence, on appeal, we look to the evidence most favorable to the appellee to determine if there is substantial evidence of probative value or reasonable inferences therefrom to sustain the decision of the trial court. We will reverse the decision only if the evidence and reasonable inferences are undisputed, and could only lead to a decision contrary to the one arrived at by the jury. *State Security Life Ins. Co.* v. *Kintner* (1962), 243 Ind. 331, 185 N. E. 2d 527; *City of Whiting* v. *Grindle* (1945), 115 Ind. App. 407, 59 N. E. 2d 360.

There are no material contradictions in the evidence presented at the trial of this case. On July 30, 1963, John Palmer and Jerry Decker, both fourteen years old, went swimming together. They returned to their respective homes and agreed to meet later that same day to go to the woods and shoot Palmer's BB gun. When Decker arrived at the Palmer home he was told to enter by Mrs. Palmer who further told him that young Palmer was in his bedroom. Decker walked down the hallway and as he entered the open doorway was struck in the eye by a BB fired from Palmer's gun. At the time of the incident Palmer had been sitting on his bed with the BB gun on his lap. The doorway was to his right and slightly behind him. He testified that he was unaware that the gun was loaded or that it had been lever-cocked but that he was aware of the fact that he did not know whether or not the gun was loaded or lever-cocked. Although he was aware of the doorway in his room he did not realize the gun was pointed

in the direction of the doorway nor was he aware of the presence of appellee Decker in the house. He testified that he was well trained and versed in the operation and safety of the gun. He pulled the hammer back and fired the gun, the pellet striking Decker in the eye as he entered the room.

Rhetorical Paragraph 7 of appellee's complaint contains the following allegations of negligence:

"7. The negligence of the defendant John Palmer consisted of the following acts:

"(a) Aiming and firing the rifle at a doorway through which he could have reasonably expected a person to appear.

"(b) Aiming and firing the rifle at the person of the plaintiff Jerry Michael Decker.

"(c) Aiming and firing the rifle in the general direction of the person of the plaintiff Jerry Michael Decker."

Appellant contends that none of the facts support an essential element of appellee's case, namely, that the appellee "intentionally aimed and fired said air rifle at or in the direction of the appellee or through the doorway through which the appellee could be expected to appear." In support of his position that "intent" is an essential element of appellee's cause of action, appellant cites the case of *Dunkle* v. *State* (1960), 241 Ind. 548, 173 N. E. 2d 657. That was a criminal case wherein the defendant was charged in two counts. The first was that of drawing a dangerous weapon in violation of Ind. Acts of 1905, ch. 169, § 448, the same being Burns' Ind. Stat. Ann. § 10-4707:

"Whoever draws, or threatens to use, any pistol, dirk, knife, slung-shot or other deadly or dangerous weapon, already drawn upon any other person, shall be deemed guilty of a misdemeanor. . . ."

The second charge was that of pointing or aiming a weapon in violation of Ind. Acts of 1905, ch. 169, § 452, the same being Burns' Ind. Stat. Ann. § 10-4708:

"It shall be unlawful for any person over the age of ten years, with or without malice, purposely to point or aim any pistol, gun, revolver or other firearm, either loaded or empty, at or toward any other person; and any person so offending shall be deemed guilty of an unlawful act, and, on conviction, shall be fined not less than one dollar nor more than five hundred dollars."

The appellant in *Dunkle* contended that he had been convicted twice for the same offense. He alleged that the two statutes in question had substantially the same meaning. The court in *Dunkle* held that to draw a weapon within the purview of Burns' § 10-4707, *supra,* was a separate and distinct offense from that of pointing or aiming a weapon under Burns' § 10-4708, *supra.* The court distinguished between the word "draw" on one hand and the words "point" or "aim" on the other. In so doing the court by footnote accepted the following definition for the word "aim":

"4. *Aim.* 'The pointing of a weapon, as a gun, a dart, or an arrow, at, or so as to bear upon, the object intended to be struck; the line of sighting; hence, the direction of anything, as a spear, a blow . . . toward a particular point or object, with a view to strike or affect it.' Webster's New International Dictionary, Second Edition." 241 Ind. at 553.

The appellant alleges that the Court accepted as the proper definition of the word "aim" the definition contained in the *Dunkle* case.

The *Dunkle* case stands for the proposition that a charge under Burns § 10-4708 using the word "aim" in conjunction with the word "purposely" clearly requires proof of the element of intent or intentional aiming. The case does not support appellant's contention that the use of the word "aim" alone involves an element of intent. The statute (Burns' § 10-4708) which makes unlawful the purposeful pointing or aiming of a weapon at another, modifies the word "aim" with the word "purposely". If the word "aim" alone connoted intent or purpose such modification would be redundant.

In addition, the definition contained in the Dictionary indicates there is an equal and coordinate meaning of the word aim, namely, "the line of sighting". Therefore, this definition cited in the *Dunkle* case shows that the word aim can have more than one meaning. We believe a common usage of the term "aim" connotes a "pointing in the general direction of".

In further support of his position that the term "aim" includes an element of intent, appellant cites the case of *Sutton v. Bonnett* (1887), 114 Ind. 243, 16 N. E. 180. In that case three boys were out hunting together. One boy was accidentally shot. The injured boy brought an action for his injuries against his companion who had accidentally discharged the weapon and wounded him. The complaint was based upon the violation of a statute which made it an actionable wrong for one to *purposely* point a pistol at another. The court in the *Sutton* case found that the jury was warranted in finding for the defendant where there was a failure to prove a purposeful shooting. Appellant cites the case for the proposition that he is entitled to a directed verdict for failure of appellee to give substantial proof of a "purposeful" aiming and firing. However, in that case "purposeful" was an element of the cause of action because such cause of action was based upon a statute which made a purposeful shooting a crime or actionable wrong. The court also said on this point: "We agree with counsel for the appellant that a defendant who negligently shoots another is liable." We think this language supports appellee's contention that a purposeful or intentional act is not necessary to prove an allegation that a plaintiff had been injured as a result of a *negligent* aiming and firing.

We hold that the evidence sufficiently proves that allegation of appellee's complaint that the appellant negligently aimed and fired the rifle at a doorway through which he could have reasonably expected a person to appear and warranted the verdict of the jury and the denial by the trial court of appellant's motion for a directed verdict. In

effect, we hold that proof of a purposeful or intentional aiming of the gun was unnecessary to recovery by the appellee.

Appellant's second allegation of error is that the trial court erred in giving to the jury over objection of the appellant appellee's tendered Instruction #5. Said Instruction reads as follows:

> "It is admitted as the plaintiff, Jerry Michael Decker, entered the room of the defendant, John Palmer, Jerry Michael Decker was struck in the left eye by a pellet or BB fired from the BB rifle of the defendant, John Palmer.
>
> "If you find from a fair preponderance of the evidence that at the time of the use of the BB rifle by the defendant, John Palmer, on the occasion in question, John Palmer knew or, in the exercise of reasonable care, should have known, that his BB rifle was on safety before he fired the BB rifle; that the defendant John Palmer, knew or, in the exercise of reasonable care, should have known, that a pellet or BB fired from his BB rifle could cause physical injury; and that the defendant, John Palmer pointed his BB rifle toward a doorway through which he could have reasonably expected a person to appear, you may find that such conduct constituted negligence on the part of the defendant, John Palmer."

Appellant contends that this Instruction instructed the jury on matters that were not within the issues formed by the pleadings and the evidence. From the outline of the facts of this case above it is obvious that this Instruction is within the issues raised by the complaint and evidence in the case. The appellant admits that he pulled the hammer back and fired the gun without checking whether or not it had been loaded and cocked and was pointed in the direction of the doorway. At that time he also knew that the appellee would return to his home and meet him there and that the two of them were to go from his home to the woods to shoot the gun. The substitution by the court of the word "point" for the word "aim" did not render the Instruction erroneous, since as argued above the word point conveys essentially the same meaning as the word aim, and would be a reasonable equivalent when used in a jury instruction. *Lincoln National*

*Bank & Trust Co. of Fort Wayne* v. *Parker* (1941), 110 Ind. App. 1, 34 N. E. 2d 190; *Harper* v. *James* (1965), 246 Ind. 131, 203 N. E. 2d 531.

The appellant's third allegation of error is that the trial court erred in refusing to give appellant's Instruction #9, which reads as follows:

"Ladies and Gentlemen of the jury I instruct you that the word aim means the pointing of a weapon as a gun, at or so as to bear upon the object intended to be struck; the direction of anything toward a particular point or object with a view to strike it."

This Instruction was properly refused. The word "aim" is not a legal or technical word but rather is one of common usage and requires no definition or explanation to be understood by jurors of ordinary intelligence. *New York Central R. Co.* v. *DeLeury* (1934), 100 Ind. App. 140, 192 N. E. 125. In addition, we have already established that the word "aim" alone does not imply a purposeful aiming.

Appellant's fourth allegation of error is that the trial court erred in giving appellee's tendered Instruction #6 over appellant's objections. That Instruction reads as follows:

"A person is bound to use the senses and to exercise the reasoning faculties with which nature has endowed him."

Appellant contends that this Instruction placed upon appellant the standard of care required of an adult, whereas it is the law of Indiana that the care that must be exercised by a child is measured by that standard of care that children of like age, knowledge, and judgment and experience would ordinarily exercise under like conditions and circumstances. The appellant was fourteen years old at the time of the incident in this case.

The Instruction does not purport to inform the jury that appellant was to be treated as an adult or that he was to be held to an adult standard of care. The alleged error is prem-

ised on consideration of the Instruction separate from the other Instructions given by the trial court. However, the trial court also gave Instruction #8 which was tendered by the appellant himself:

> "Negligence on the part of John Palmer as may be referred to in these instructions consists of the doing of one or more acts charged as negligence which a child of fourteen years of age of like knowledge and experience and judgment would do nor not do under the same or similar circumstances.

> "The defendant John Palmer, in this case who was fourteen years of age at the time of the occurrence in question is not to be judged by the same standard as an adult or a more mature child and his actions must be judged in determining whether he was guilty of negligence as a child of similar age, knowledge, judgment and experience would exercise under same or similar circumstances."

Thus, the trial court gave, at appellant's request, the proper instruction as to the standard of care required of the appellant.

The Instructions have to be considered as a whole to determine whether the jury was fairly and properly instructed. *State* v. *Coridan* (1943), 221 Ind. 404, 47 N. E. 2d 978; *Carter* v. *Aetna Life Ins. Co.* (1940), 217 Ind. 282, 27 N. E. 2d 75. All applicable law does not have to be incorporated into one instruction, *McClure* v. *Miller* (1951), 229 Ind. 422, 98 N. E. 2d 498; *Grand Trunk Western R. Co.* v. *Poole* (1910), 175 Ind. 567, 93 N. E. 26, nor does the court have to instruct on any specific rule of law more than once. *Hancock Truck Lines* v. *Butcher* (1950), 229 Ind. 36, 94 N. E. 2d 537. When considered together both Instructions are proper and are in no way inconsistent.

Appellant's last allegation of error is that the trial court erred in giving court's Instruction #3 which reads as follows:

> "I have just read to you what is known as the pleadings in the case. The pleadings have been prepared and filed by the respective attorneys for each of the parties. They are merely the formal way of presenting the case for trial and set out the respective claims of the parties.

"The pleadings are not evidence in the case and should not be considered by you as proof of any fact.

"However, any admission of fact contained in the pleadings must be accepted by you as true."

Appellant argues that this Instruction mis-states the law of Indiana when it says the pleadings are "merely the formal way of presenting the case for trial and set out the respective claims of the parties" because in fact the pleadings also set forth the material allegations upon which the appellee must recover. Appellant argues that Instruction #3 implies the jury does not have to confine their deliberation to the allegations in the complaint.

Appellant admits that there "is no question but that the court in prior instructions instructed the jury upon the issues set forth in the complaint and stated to the jury that the burden was upon the plaintiff or appellee to prove the material allegations of their complaint." Therefore, appellant is really arguing that Instruction #3 is erroneous either because it does not state *all* of the law concerning the role of the pleadings in the trial, or because it is in conflict with other instructions.

All applicable law does not have to be incorporated in one instruction. *McClure* v. *Miller, supra.* We must consider all the instructions as a whole to determine whether the jury was fairly and fully instructed. *State* v. *Coridan, supra.*

Neither is Instruction #3 in conflict with the other instructions on the issues and appellee's burden of proving the material allegations in his complaint. Appellant points to no such conflict or source of confusion for the jury. The questioned Instruction was taken from the Indiana Pattern Jury Instructions, IPJI, No. 1.05, "Explanation of the Pleadings". The purpose of the instruction is to explain the general nature of the pleadings and not to state the technical, legal functions of the pleadings under Indiana law.

When considered as a whole the instructions were not con-

tradictory, or confusing and fairly informed the jury of the issues before them.

The judgment of the trial court is affirmed and costs are taxed against appellants.

Hunter, C.J., Arterburn, Givan, JJ., concur; Jackson, J., dissents without opinion.

NOTE.—Reported in 255 N. E. 2d 797.