## AETNA CASUALTY & SURETY COMPANY v. ACME-GOODRICH, INC. ETC.

[No. 19,028. Filed June 11, 1959. Rehearing denied October 13, 1959. Transfer denied March 11, 1960.]

434

*John W. Houghton, Raymond Gray, Jr., Barnes, Hickam, Pantzer & Boyd,* of counsel, all of Indianapolis, *Robert L. Smith* and *Smith & Fraser,* of counsel, of Portland, for appellant.

*William A. Gutheil,* of Winchester, *Jenkins & Fiely* and *Frank B. Jaqua,* both of Portland, for appellee.

GONAS, C. J.—This action was brought upon an insurance policy which is designated as a "Deferred Payment Merchandise Policy," in which policy the appellee Acme-Goodrich, Inc. is named as the assured and called the "Vendor." The policy insured poultry sold by the Vendor on a deferred payment basis and covers certain stated risks and perils. Coverage is applicable "for the account of the Vendor and Vendee, until the interest of Vendor is terminated."

Appellee Owen Wright bought poultry from appellee Acme-Goodrich, Inc., doing business as Goodrich Brothers Company, on a deferred payment basis, and both appellees brought this action, claiming to be "Vendor" and "Vendee" under the policy, to recover for a loss resulting from the deaths of a large number of chickens on June 7, 1952.

The cause was submitted to a jury upon the issues formed by appellees' third amended complaint and appellant's answer thereto. At the conclusion of appellees' evidence, upon motion granted by the court, appellees amended their third amended complaint by interlineation. A verdict was returned in favor of appellees and judgment was rendered against appellant in accordance with the verdict.

Prior to the trial appellant filed its combined motion under Rule 1-3A, Rules of the Supreme Court, to strike parts of the third amended complaint, and to require parts thereof to be made more specific and to require facts to be stated to support conclusions. This motion was overruled and appellant thereafter filed its demurrer, which was also overruled. Such rulings are presented as error.

The insurance policy sued upon insured against direct loss or damage caused by smoke and further provides that it does not insure against death resulting from huddling, piling or smothering of the poultry unless the same be induced by a peril insured against.

It is alleged in the third amended complaint that on June 7, 1952, a motor attached to a ventilating fan in the brooder house of the appellee, Owen Wright, became shorted thereby causing said motor to smoke and thereby frightening the chickens to such an extent that they huddled in a group on top of and around each other in the brooder house, thereby causing the death of 3154 of them by smothering. There was added to this allegation, by interlineation, at the close of appellees' evidence the words "which said deaths of said chickens resulted directly from smoke, or huddling, piling, smothering induced by said smoke."

The original insurance policy upon which this action is founded provides that it attaches on the 1st day of

April, 1952 and is to be deemed continuous until cancelled. It further provides that it is to cover live poultry "heretofore or hereafter sold by the Vendor on deferred payments or conditional sales agreements, or furnished by the Vendor under agreements to be reimbursed at the time such poultry is marketed." The contract entered into between the appellees is dated February 29, 1952.

Attached to the policy and made an exhibit to the third amended complaint is an Endorsement No. 2, also dated April 1, 1952, in which it is provided that:

"B.   This insurance does not apply to transaction involving property covered by contracts dated prior to May 1, 1952 and the value of property covered by contracts dated prior to May 1, 1952 shall be omitted from reports required by paragraph 5 (e) of the rider form attached to this policy."

Appellees allege in rhetorical paragraph 7 of their third amended complaint:

"that, as originally issued, said policy of insurance covered any and all contracts of the plaintiff Goodrich Brothers Company, with growers and raisers of poultry, and did not then include the endorsement number two attached thereto and there were no exclusions of coverage as provided in said endorsement number 2, until after the 18th day of June, 1952, after which time the defendant prepared and issued said endorsement number two, and delivered same to the plaintiff, Goodrich Brothers Company, all without the knowledge or consent of said plaintiff, and instructed plaintiff to attach said endorsement number two to said policy, *and that by reason thereof, said endorsement number two was not in effect as to said policy at the time of the loss sued upon in this action.*"

Appellant's argument is that when its motion addressed to the third amended complaint was overruled,

the effect was that when the amended complaint was thereafter tested by demurrer for insufficient facts, its sufficiency must be determined from the facts stated, without support from any conclusions which are not drawn from facts fully pleaded; that the allegation "that by reason thereof, said endorsement number two was not in effect as to said policy at the time of the loss sued upon in this action," is a conclusion of law which must be disregarded; that without such allegation it appears from the complaint that while endorsement number two was not a part of the policy at the time it was originally issued and was not in effect at the time of the loss, it was a part of the policy at the time the complaint was filed; that it therefore appears that the insurer and the named insured changed, released, or waived their rights thereunder following the loss. However, it is alleged that said endorsement was issued without the knowledge or consent of the appellee Goodrich, and even if we should hold that the complained-of allegation is a conclusion of law, in our opinion the amended complaint was not subject to demurrer on the grounds set forth in the memorandum thereto, and no error was committed which would require a reversal of the judgment.

On November 24, 1954 appellant filed a motion for a court trial, without the intervention of a jury, and appellees filed a verified motion in opposition thereto, stating in effect that at numerous times prior to the closing of the issues appelles had notified the judge of the Randolph Circuit Court, in which the cause was then pending, that they requested a jury trial, and that they also told counsel for appellant that they requested a jury trial. The cause was thereafter venued to the Jay Circuit Court, and in that court the motion for court trial was overruled and the issues of the cause

were submitted to a jury. Appellant has assigned this as error.

Rule 1-8a, Rules of the Supreme Court, was adopted September 25, 1953, effective January 1, 1954. Although it has since been amended, at all times material to the present action it read as follows, as shown by 232 Ind. xliv:

> "A jury trial in other than criminal cases, where trial by jury may now be had, may be requested by any party within (not later than) ten (10) days after the closing of the issues upon which the cause is tried. A jury trial not so requested shall be deemed waived.
>
> "A demand for trial by jury may not be withdrawn without the consent of all other parties."

The parties, of course, have both waived the right to a jury trial. The question now is whether the action of the court in submitting the cause to the jury was a reversible error.

Sec. 2-1204, Burns' 1946 Replacement, provides, in part, as follows:

> "That in all cases triable by the court as above directed, the court, in its discretion, for its information, may cause any question of fact to be tried by a jury, . . ."

Appellant's brief discloses no objections made by it to the submission of the cause by the court to the jury. The only error assigned is that the court erred ■ in overruling appellant's motion for court trial. However, after the overruling of said motion and without further objections, insofar as appears from appellant's brief, the appellant proceeded to trial. Nor does appellant's brief show any prejudice to it resulting from the action of the court. Therefore, under the provisions of the aforesaid statute, and the failure of the

appellant to enter any objections to a jury trial, we think the matter rested within the sound discretion of the trial court and appellant has made apparent no abuse of such discretion. *Doll* v. *Anderson* (1865), 27 Cal. 248; *Shores* v. *Murphy,* (S. C. Fla. 1956), 88 So. 2d 294.

Error is asserted in the action of the court in permitting the third amended complaint to be amended by interlineation at the close of appellees' evidence and in denying appellant a continuance at that time. No authorities are cited in support of these contentions of error and any questions relating thereto are therefore waived. Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice,* §2677, Comment 11, and cases there cited.

Appellant complains of the action of the court in overruling its objections and permitting appellees' witness, J. B. McAllen, to answer a question on redirect examination. The policy in this case, without Endorsement No. 2, provides that it attaches on the 1st day of April, 1952. By Paragraph 5 (e) of the policy the Vendor agrees to keep and maintain an accurate itemized record showing all transactions involving the property to which the insurance applies and to report the values at risk on the last day of each month to the Company not later than the 15th day of the following month. On cross-examination the witness testified that no report was filed for the month of April, 1952. Then on redirect examination he was asked if there was a report due for the month of April, 1952. Objection was made to the question on the ground that it was leading and suggestive, calls for legal interpretation of a written document, calls for a legal conclusion on the part of a witness, and that the contract itself is the best evidence. The court overruled the objection

on the ground that the question was proper upon redirect examination. The witness answered that a report was not due. If there was error in the ruling, appellant has failed to demonstrate it in its brief. The brief contains no argument or citation of authority on the question. It follows that the contention is waived.

Error is claimed in the refusal to withdraw from the jury certain issues: (1) Whether the deaths of the chickens resulted from huddling and piling, and (2) whether such deaths resulted directly from smoke. The argument is that there was no evidence upon these issues. This argument will be discussed in connection with appellant's contention that the verdict is not sustained by sufficient evidence and is contrary to law.

The trial court's instruction No. 2 reads, in part, as follows:

> "You are instructed that this case arises upon an insurance policy that the defendant issued to the plaintiff, Goodrich, on or about the 1st day of April, 1952, to cover a certain feeder contract entered into between plaintiff, Goodrich, and plaintiff, Wright, on February 29, 1952, copies of which have been identified respectively as Exhibits 'A' and 'B.' These allegations have been admitted by the defendant, and are thus to be taken by you as established facts. . . ."

Appellant contends that, "While appellant admitted that the insurance policy was issued and that the feeder contract was executed between appellees," it did not admit the policy was issued to cover the particular feeder contract; that the instruction was prejudicially partisan in telling the jury what Goodrich intended to do in procuring the policy. This part of the instruction merely tells the jury the basis of the action. "Our reviewing courts have repeatedly stated that the verbal niceties and fine distinctions

which analytical minds are capable of making in the use of words are not to be invoked to hamper trial courts and work reversals when it is plain that a man of ordinary understanding would not be misled by the instructions given." 2 I. L. E. *Appeals*, §629, with cases cited.

The following is a further part of the court's instruction No. 2:

> "For plaintiffs to prevail and recover, they must prove by a fair preponderance of all of the evidence in the case all of the material allegations of their complaint: That there was a valid contract of insurance in effect at the time of the loss alleged; that plaintiffs were the owners of the poultry insured; that the losses complained of were sustained by the insured on his premises; and that the losses alleged resulted from such a risk for which the policy issued by defendant provided coverage."

A long objection was made to the giving of the whole of the instruction, but the only objection directed to the above quoted part was:

> "It indicates to the jury that they may find for the plaintiffs upon proof of the facts set forth in the last paragraph of such Instruction No. 2 and omits other facts the proof of which is necessary before plaintiffs would be entitled to recover."

Appellant argues that some five specific facts were omitted from this part of the instruction which had to be proved by appellees before they would be entitled to recover. However, none of these were specifically mentioned in the objection and appellant did not tender instruction on these matters. Under Rule 1-7, Rules of the Supreme Court, no error is available except under specific objections made. Such objections not having been made in the trial court, they are not available here. *Huntington Post, American*

*Legion* v. *Arnold* (1952), 123 Ind. App. 160, 109 N. E. 2d 98.

Another part of the same instruction informed the jury:

"An insurance policy is described as a contract, and by this one plaintiff, Goodrich, has sought to provide insurance coverage on poultry flocks sold by them to poultry feeders, such as plaintiff, Wright. By this policy defendant has agreed for and in consideration of certain calculated payments to insure such flocks against loss or damage by certain specified casualties for the time or period mentioned therein."

Appellant objected on the grounds that the instruction assumed disputed or unsupported facts, that is, that the Wright flock was covered under the policy and was insured property thereunder; that Wright was an insured person under the policy; and that Goodrich had an insurable interest in the Wright flock.

Nonmandatory instructions must be considered as a whole, with reference to each other, and not as isolated individual instructions. *Stull* v. *Davidson et al.* (1955), 125 Ind. App. 565, 127 N. E. 2d 130; *Burks* v. *Walters* (1957), 127 Ind. App. 358, 141 N. E. 2d 872; *Carter* v. *Aetna Life Ins. Co.* (1940), 217 Ind. 282, 27 N. E. 2d 75. Reading the instructions as a whole, we do not consider that this instruction was subject to the objections made. Considered as a whole, the jury was fairly and fully instructed, and the giving of this instruction was not reversible error *Chmielewski's Estate* v. *Chmielewski* (1936), 102 Ind. App. 20, 200 N. E. 747; *Hamling* v. *Hildebrandt* (1948), 119 Ind. App. 22, 81 N. E. 2d 603.

By its instruction No. 4 the court told the jury that appellees had alleged and offered evidence in support thereof that Endorsement No. 2 was not attached to the

policy until after the date of the loss and that it was not agreed to and not intended to .be a part of the policy; that appellant had offered evidence to the effect that it was the intent of the parties that Endorsement No. 2 become a part of the policy. Appellant contends that the court, by stating that evidence had been offered in support of the appellees' allegations, invaded the province of the jury and made a partisan comment on the evidence in that it told the jury appellees' evidence did in fact support the allegation. Read as a whole, we do not construe the instruction as to be subject to the objections made to it. We also note that appellant's instruction No. 12, given by the court, also pointed out certain evidence given on behalf of appellant relative to the same matter. The court did not err in giving this instruction.

Complaint is also made of the court's refusal to give appellant's tendered Instructions Nos. 14 and 15, whereby the jury would have been advised as to the results of certain findings made by the jury with reference to the issue of whether or not Endorsement No. 2 was a part of the policy at the time of the loss. The subject matter of these instructions was covered in substance by other instructions given, including appellant's given instructions Nos. 9, 10 and 12. It is not error to refuse an instruction when the subject thereof is fully covered by instructions given. *Lenovich* v. *State* (1958), 238 Ind. 359, 150 N. E. 2d 884; *Burks* v. *Walters, supra; Armstrong Cork Co.* v. *Maar* (1953), 124 Ind. App. 105, 111 N. E. 2d 82, 112 N. E. 2d 240.

By its instruction No. 13 the court told the jury that if it found for appellees, the amount of recovery could not exceed the amount prayed for. Appellant's only objection which was made to the instruction, and which is argued here, is that the in-

struction failed to instruct the jury as to the measure of damages. Appellant admits that it did not tender any instruction on the subject. Had appellants desired that a more complete instruction be given, it should have tendered such an instruction. It cannot claim error without tendering a proper instruction containing the elements desired. *Magenheimer* v. *State ex rel. Dalton* (1950), 120 Ind. App. 128, 90 N. E. 2d 813; *Riechmann* v. *Reasner* (1943), 221 Ind. 628, 51 N. E. 2d 10; *Hamling* v. *Hildebrandt, supra.*

In urging that there was error in the assessment of the amount of recovery in that it was too large, appellant contends that the evidence was wholly insufficient to submit the matter of any amount of recovery to the jury; that the evidence fails to establish any loss from any peril or risk insured against. This argument is an extension of the argument as to the insufficiency of the evidence to sustain the verdict, and is herein discussed in connection with that point.

Appellant contends that the verdict is not sustained by sufficient evidence and is contrary to law, and that the court should have directed a verdict in its favor; that the evidence and inferences therefrom most favorable to appellees fail to show that the loss of the chickens involved was due to any huddling or piling; that there was no evidence that the deaths of the chickens was caused directly by smoke; and that there was no evidence that Acme-Goodrich had an insurable interest in the chickens.

It is appellant's contention that Acme-Goodrich terminated its interest in the poultry flock at the time it sold it to appellee Wright; that it neither retained any interest or thereafter acquired any. Appellant cites authorities to the effect that a general unsecured creditor owning a mere personal claim against

his debtor does not have an insurable interest in the debtor's property. The evidence here shows, however, that the contract relationship between appellees was more than a simple creditor-debtor relationship. The contract provided for the sale of poultry and certain feeds. Payment was to be made within twenty-four hours after marketing of the chickens or their removal from Wright's farm. Provision was made for the acceleration of payment upon breach of the contract or under terms of a chattel mortgage, which chattel mortgage, however, was not introduced in evidence. Wright agreed to vaccinate the chickens upon request of Acme-Goodrich and to continue to feed them a certain type of feed until they were marketed. Wright was required to allow Acme-Goodrich to inspect the chickens at all reasonable times, and to notify it in writing of any intention to ship to market, or to remove them, and to notify it immediately of any shipment or removal. In our opinion, under all the evidence in this case, the jury was authorized to infer and conclude that appellee Acme-Goodrich had an insurable interest in the chickens. 44 C. J. S. *Insurance,* §175, p. 871, §185, p. 881; 29 Am. Jur., *Insurance,* §322, p. 293.

There was evidence that an electrical motor which operated a ventilating fan in the brooder house became so hot it burned off most of the vitreous enamel finish. "A lot" of blue-gray smoke was emitted, which smoke had "a terrible odor" and "hurt your throat" and "sort of needles your lungs." This condition was discovered at noon, at which time the motor was replaced, there then being smoke throughout the brooder house. The majority of the chickens which died did so between 1:30 and 5:00 P.M. on Saturday, June 7, 1952. Appellee Wright's son, who helped replace the motor, testified that the chickens were huddled

together. There was evidence that the chickens were lying close together and that some of them had their necks stretched out over others, and some were walking over others. From the evidence, including the opinion of a veterinarian based upon hypothetical questions that the smoke in the building caused the chickens to become frightened and caused them to huddle and smother, the jury could have properly concluded that the deaths of the chickens was caused by the smoke. Further, the policy covered death of the chickens resulting from huddling, piling and smothering when such huddling, piling and smothering was induced by a peril insured against. Smoke was a peril insured against and the jury, under such evidence, could have concluded that the huddling and piling of the chickens was caused by the rancid smoke. We conclude that the verdict was sustained by sufficient evidence; that it was not contrary to law; that the court did not err in refusing to withdraw certain issues from the jury and in not directing a verdict for appellant; that there was no error in the assessment of the amount of recovery.

We find no error, and the judgment is affirmed.

Kelley, Bierly, and Smith, JJ., concur.

NOTE.—Reported in 159 N. E. 2d 310.